**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**T. Michael HOLMES, Defendant–Appellant.**

No. 97CA0848.

Colorado Court of Appeals, Div. IV.

April 2, 1998.

Rehearing Denied April 30, 1998.

Certiorari Denied Nov. 9, 1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John D. Seidel, Assistant Attorney General, Denver, for Plaintiff–Appellee.

T. Michael Holmes, Pro Se.

Opinion by Chief Judge HUME.

T. Michael Holmes, an attorney, appeals the trial court's judgment finding him guilty of direct contempt. We affirm.

Holmes was a defendant in a criminal case. At a pretrial hearing, the time allotted for that hearing expired before all the evidence had been presented. When the trial court offered to continue the hearing the following month, Holmes made a comment which the court overheard. The court asked Holmes: "What did you say, Mr. Holmes?" To which Holmes replied: "I said it was protracted bullshit." The court immediately informed Holmes that he was in contempt of court.

Later, Holmes' attorney told the court that, although he personally had not heard the comment, his understanding was that it was made out of the side of Holmes' mouth and that it was not directed at the court. He explained that Holmes:

had hoped to have the hearing done today, and it's just been very frustrating that this whole thing is dragging on. Something he certainly wasn't intending to [do was] dishonor the Court or attack the integrity of the Court.

The prosecutor told the court that he thought the remark was "probably" directed at him rather than toward the court.

Holmes apologized to the court and admitted that his comment "was a violation of the dignity of this court and proceedings," and that it "was uncalled for."

The court then found that the facts constituting the contempt were that Holmes had leaned back in his chair, looked toward the prosecutor, and made an obscene comment. The court also found "that that comment constitutes misbehavior, that the misbehavior obstructs the functioning of the Court and is offensive to the authority and dignity of the court." It then sentenced Holmes to two days in jail and imposed a $500 fine.

Holmes filed a motion to reconsider the court's finding of direct contempt that same day. In a written order, the court found that:

Earlier on this date the court found the Defendant to be in direct contempt of court for uttering an obscenity during the course of the proceedings, which obscenity was directed toward counsel for the People and which was heard by the Court. Given the nature of the remark, the manner in which [it] was made, and given as well Defendant's status as an attorney admitted to the Bar, the previously made findings of contempt are well supported and entirely appropriate and are not modified.

Then, after stating the mitigating factors which Holmes asserted in his motion, the court further found that:

Though the choice of [Holmes'] words [was] wrong for a courtroom setting, the frustration expressed was not completely off the mark given the failure of counsel to remain focused on the constitutional issue being presented to the Court during the unnecessarily protracted hearing.

The court therefore suspended the jail portion of Holmes' sentence on the condition that, within 45 days, he perform 20 hours of free services for the Mesa County pro bono project.

On appeal, Holmes contends the trial court erred in finding him in direct contempt. He maintains that, while a warning may have been warranted, the record does not support the court's finding of direct contempt. We disagree.

"Contempt" is defined in C.R.C.P. 107(a)(1) as:

Disorderly or disruptive behavior, a breach of the peace, boisterous conduct or violent disturbance toward the court, or conduct that unreasonably interrupts the due course of judicial proceedings; behavior that obstructs the administration of justice; disobedience or resistance by any person to or interference with any lawful writ, process, or order of the court; or any other act or omission designated as contempt by the statutes or these rules.

" Direct Contempt" is defined in C.R.C.P. 107(a)(2) as:

Contempt that the court has seen or heard and is so extreme that no warning is necessary or that has been repeated despite the court's warning to desist.

Summary contempt power is that which is necessary to ensure and preserve decorum in the courtroom. Such power is not designed to protect a judge's own dignity, but rather to protect the rights of litigants and the public. It should be invoked only when the judicial process has been seriously affronted or disrupted. *See People v. Ellis,* 189 Colo. 378, 540 P.2d 1082 (1975).

A finding of contempt is within the sound discretion of the trial court, and a reviewing court may not disturb such a finding absent a clear abuse of discretion. *Hill v. Boatright,* 890 P.2d 180 (Colo.App.1994).

Here, we perceive no abuse of the trial court's discretion in finding Holmes in direct contempt. Holmes admitted that his remark was inappropriate, uncalled for, and was an affront to the dignity of the court and its proceedings. In addition, because Holmes was an attorney, admitted to practice before the courts in this state, he was under a duty to conduct himself with civility in court proceedings. Under these circumstances, we perceive no abuse of discretion in the court's invocation of its summary contempt authority.

Accordingly, the judgment is affirmed.

RULAND, J., concurs.

NEY, J., dissents.

Judge NEY, dissenting.

Because I conclude that the defendant's conduct is not proscribed by definitions set forth by the recently adopted C.R.C.P. 107(a)(1) and (2)(revision effective June 15, 1995), I would reverse.

The power to punish a person for contempt, especially where there is no improper intent present, should be exercised with caution after due deliberation, and only when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice. *Conway v. Conway,* 134 Colo. 79, 299 P.2d 509 (1956). That power is not designed to protect a judge's own dignity, but rather to protect the rights of litigants and the public. It should be invoked only when the judicial process has been seriously affronted or disrupted. *See People v. Ellis,* 189 Colo. 378, 540 P.2d 1082 (1975).

The Supreme Court has held that the use of the word "chicken-shit" cannot constitutionally support a conviction of criminal contempt when it was not directed at the judge and did not constitute a threat to the administration of justice. *Eaton v. Tulsa,* 415 U.S. 697, 94 S.Ct. 1228, 39 L.Ed.2d 693 (1974). *See also In re Little,* 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972)(trial courts must be on guard against confusing offensives to their sensibilities with obstruction to the administration of justice). *See also Hodges v. Gray,* 321 Ark. 7, 901 S.W.2d 1 (1995)(contempt for using "bullshit" after counsel had been warned not to use inappropriate language set aside).

In a study of 150 epithets, the term "bullshit" has been found to be near the bottom of the list of offensiveness (135), and even less offensive than "chicken-shit" (126). T. Jay, *Cursing in America: A Psycholinguistic Study of Dirty Language in the Courts, in the Movies, in the Schoolyards, and on the Streets* 148 (1992).

Here, while I do not condone defendant's behavior, I conclude that the trial court abused its discretion in finding him in direct contempt. Despite the court's initial finding that Holmes' comment caused an obstruction of justice, I find no support for that nor any other ground defined by C.R.C.P. 107(a)(1) in the record. And, the comment was not so extreme that a prior warning from the court was not required. While defendant's choice of language to express his frustration with the prosecution was inappropriate, that alone is insufficient to support a finding of contempt.

Accordingly, I would reverse the judgment.