**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Michael Lee JONES, Defendant,**

**and**

**Concerning Sommer Spector, Respondent–Appellant.**

**No. 09CA1947.**

Colorado Court of Appeals, Div. III.

Aug. 18, 2011.

Daniel H. May, District Attorney, Doyle J. Baker, Deputy District Attorney, Colorado Springs, Colorado, for Plaintiff–Appellee.

Haddon, Morgan and Foreman, P.C., Jeffrey S. Pagliuca, Denver, Colorado, for Respondent–Appellant.

Opinion by Judge J. JONES.

Sommer Spector, Esq., a deputy state public defender, appeals the district court's orders holding her in contempt for conduct during her representation of Michael Lee Jones. We vacate the orders and remand the case for further proceedings.

## I. Background

The People charged Mr. Jones with kidnapping and several counts of sexual assault and unlawful sexual contact. Ms. Spector and another deputy public defender represented him.

Much of the trial was devoted to presenting evidence of two other alleged sexual assaults by defendant, one in Miami and one in New Orleans. The trial judge had determined before trial that this evidence was admissible under CRE 404(b) to show defendant's common plan, scheme, or design, and to rebut defendant's defense that the victim in this case had consented.

On the third day of trial, Ms. Spector cross-examined a Florida detective who had investigated the Miami assault. The judge held Ms. Spector in contempt for asking (or trying to ask) a question, only part of which she was able to articulate before the judge stopped her. The judge found that Ms. Spector had violated earlier rulings against asking the witness about statements by persons who were not available to testify. The judge deferred sentencing Ms. Spector until after trial.

A jury found defendant guilty of one count each of sexual assault and unlawful sexual contact.[1]

Ms. Spector filed motions to vacate the contempt finding and to have the contempt matter assigned to another judge, both of which the trial judge denied the day before the contempt sentencing hearing. In its written order denying Ms. Spector's motion to vacate the contempt finding, the judge said:

As a result of her misconduct throughout the trial, the Court had repeatedly warned Ms. Spector that further violations of court orders would result in a finding of contempt. This included a lengthy admonition to Ms. Spector on the morning [of] June 11th. When Ms. Spector continued to blatantly disregard the Court's orders, the Court was left with no option but to find her in contempt.

1. In another opinion announced today, we reverse defendant's convictions because the district court abused its discretion in admitting the CRE 404(b) evidence and the error was not harmless. *People v. Jones,* —— P.3d ——, 2011 WL 3616006 (Colo.App.2011).

In denying Ms. Spector's motion to have the contempt matter assigned to another judge, the trial judge said that because he "was the only judicial officer who was present and observed the conduct and demeanor of Ms. Spector, it would be impossible for any other judicial officer to appropriately evaluate the punishment which should be imposed."

The judge issued another order the same day saying that the only issue to be addressed at the sentencing hearing the next day "will be the appropriate punishment to be imposed."

At the contempt sentencing hearing the following day, Ms. Spector's attorney asked the judge to clarify what conduct he intended to sentence Ms. Spector for, characterizing his question as one arising out of a concern for due process. The judge responded: "Her contemptuous behavior throughout the people versus Michael Jones trial." Ms. Spector's attorney noted that this finding of contempt "seem[ed] to be more expansive than what was indicated at the time" of trial. He then indicated that he was "prepared to move forward."

Before hearing from Ms. Spector's witnesses, the judge told Ms. Spector's attorney to "focus on the issue of mitigation" and not to relitigate "previous orders of the court finding Miss Spector in contempt." After hearing from Ms. Spector's witnesses, the judge said, "[T]he finding of contempt is based upon the totality of [Ms. Spector's] conduct throughout this trial. The violation which occurred immediately prior to the finding of contempt was simply the proverbial straw which broke the camel's back." The judge also indicated that he had spoken with other judges in the same judicial district who "have had similar experiences with" Ms. Spector. The judge then gave several "examples" of Ms. Spector's conduct for which he was holding her in contempt. These were:

- "[I]mproper questioning of jurors regarding the law, in violation of the court's case management order." [2]

- Representing to the court that the victim in this case had previously been convicted of misdemeanor false reporting, when in fact the victim had received a deferred judgment.[3]

- Questioning a witness—an emergency room doctor who had treated the victim in this case—"in direct violation of" a pretrial order. As to this incident, the judge said he "would have been fully justified in finding [Ms. Spector] in contempt" when she asked the offending question.

- Asking a question of the Florida detective which was "clearly an attempt to elicit a hearsay response."

- Arguing with the judge throughout the trial about prior orders.

- Saying during closing argument that the victims in the Miami and New Orleans incidents were prostitutes, despite the lack of any such evidence.

- Including improper argument in a motion for new trial, consisting of mischaracterizations of rulings and untrue assertions that defendant's attorneys' advocacy had been chilled by the judge's demeanor and conduct toward them at trial.

The judge also indicated that he had considered Ms. Spector's conduct in two other cases. After reiterating that he was finding Ms. Spector in direct contempt, the judge sentenced Ms. Spector to perform 150 hours of community service, but stayed the sentence pending appeal.

Ms. Spector's counsel objected under C.R.C.P. 107 and on due process grounds to consideration of any conduct other than that for which the judge had found Ms. Spector in contempt at trial—the partial question to the

---

2. The case management order was not in the record until the trial judge placed it in the record during the contempt sentencing hearing. Oddly, it is dated June 10, 2009, the day after voir dire in this case.

3. We note that the record shows such a statement by Ms. Spector's co-counsel, but it does not show such a statement by Ms. Spector. We allow for the possibilities, however, that Ms. Spector made such a statement off the record or that the record incorrectly attributed the statement to co-counsel.

Florida detective. Without responding to that objection, the judge adjourned the hearing.

Ms. Spector appeals the trial judge's order at trial holding her in contempt and the subsequent order at the contempt sentencing hearing.

## II. Discussion

On appeal, Ms. Spector contends: (1) the trial judge's order at trial holding her in contempt is unsupported by the record because the question at issue did not violate a court order; (2) the judge violated her right to due process by failing to give her notice of and an opportunity to respond to the other allegedly contemptuous conduct the judge cited her for at the contempt sentencing hearing; and (3) the judge erred in refusing to recuse himself from the contempt proceeding after trial. We agree with all three contentions.

### A. The Question to the Florida Detective

The People called Detective Allen Foote of the Miami–Dade Police Department to testify concerning an investigation of an alleged sexual assault in Miami several months before the alleged assault in this case. Much of his testimony focused on the number and race of the assailants. The victim had initially indicated one man came to her hotel room, later said that there were two men, and said she had been taken from the hotel to a vacant lot by three men who then beat and sexually assaulted her. She initially described her attackers as white, but later said that one was African–American. (Defendant is African–American.)

The Miami victim's identification of defendant as one of the attackers was a key issue at trial. Ms. Spector cross-examined Detective Foote concerning information he had received from witnesses to whom the Miami victim had spoken, including a doctor, Dr. Hayden, whom Detective Foote had asked to help with the investigation. The following exchange occurred:

Q. All right. Now, Dr. Hayden is someone that you asked to interview [the Miami victim] to see if she has any memories of the incident?

A. He was brought in to assist with that, yes.

Q. All right. So, of course, you learned what she said in that interview?

A. From his reports, yes.

Q. All right. And she told you—she told Mr. Hayden, again, that the people were speaking a foreign language?

MR. CECIL [the prosecutor]: Objection; calls for hearsay.

THE COURT: Objection is sustained.

MS. SPECTOR: And, Your Honor, if I may, this is impeachment.

THE COURT: The objection is sustained.

Q. (BY MS. SPECTOR) She also talked about these men demanding a bank number?

MR. CECIL: Objection; hearsay.

THE COURT: Is this to the detective or Mr. Hayden?

MS. SPECTOR: Your Honor, this is—

THE COURT: Answer my question, Counsel.

MS. SPECTOR:—statements of [the Miami victim]—

THE COURT: To Dr. Hayden?

MS. SPECTOR:—to Dr. Hayden.

THE COURT: The objection is sustained. There will be no further questions concerning statements made by [the victim] to a witness who is not present and subject to cross-examination.

Q. (BY MS. SPECTOR) Detective Foote, I am about to ask you what [the Miami victim] did not say to your investigators throughout your investigation prior to the dream sequence, which I will label as dream sequence. When she interviewed with Dr. Hayden, she did not mention a black man on that day.

THE COURT: Excuse me, Counsel, the Court has previously entered an order that there will be no questions regarding statements made to Mr. Hayden. He is not present and not able to be cross-examined. Ask no further questions as the Court has directed you not to inquire into.

Q. (BY MS. SPECTOR) If [the victim] had said to anybody that was under your investigation—

THE COURT: All right. Counsel. Members of the jury—step back—Detective, you can go ahead and step out in the hallway.

THE WITNESS: Yes, Your Honor.

THE COURT: Members of the jury, we're gonna go ahead and break for the evening. There's an issue I have to address with the attorneys. . . .

(The following proceedings were had outside the presence and hearing of the jury:)

THE COURT: Please be seated. Miss Spector, on two specific occasions I directed you and ordered that you not inquire into statements made to a person who is not present and subject to cross-examination.

You have intentionally and blatantly again disregarded the order of the Court. I find you in direct contempt of Court. We will continue the matter for sentencing on that direct contempt until the conclusion of this trial. If there are further violations of direct orders of the Court, further sanctions will be imposed.

Do not violate direct orders of the Court. You are smart enough to know exactly what the Court indicates, and when I give you a specific order, to rephrase the question to try to elicit statements that the Court has specifically directed you not to inquire into is an affront to the dignity of this Court, and the third time, at least, that I'm aware of in this trial that you have intentionally, consciously, and willfully violated the order of the Court.

Ms. Spector then made a record that she had intended to ask, "[I]f you had learned from another investigating officer under your command that a black man was involved, that would have changed the course—the course of your investigation." The judge said, "That is a hearsay statement and is still an inappropriate question. It is an attempt to elicit a hearsay statement into the court by trying to cleverly word the question. The ruling of the Court stands, Miss Spector. Do not continue to willfully violate the orders of this court."

■ "A court may hold a party in contempt for any conduct which interferes with the court's administration of justice, is derogatory to the dignity of the court, or tends to bring the judiciary into disrespect." *People v. Aleem,* 149 P.3d 765, 774 (Colo.2007) (citing *Losavio v. Dist. Court,* 182 Colo. 180, 512 P.2d 266 (1973)); *see* C.R.C.P. 107(a)(1). "The dual purpose of the contempt power is to vindicate the dignity and the authority of the court and to preserve its viability." *Aleem,* 149 P.3d at 774. We review a trial judge's finding of contempt for an abuse of discretion. *Id.; Hill v. Boatright,* 890 P.2d 180, 187 (Colo.App.1994), *aff'd in part and rev'd in part on other grounds sub nom. Boatright v. Derr,* 919 P.2d 221 (Colo.1996).

A variety of conduct may constitute contempt. As relevant here, a court may hold a party or other person before the court in contempt for violating a court order. *See* C.R.C.P. 107(a)(1) (defining contempt as including "disobedience ... by any person to ... any lawful ... order of the court"); *see, e.g., In re Marriage of Cyr,* 186 P.3d 88, 92 (Colo.App.2008).

■ We conclude that the record does not support the judge's finding that Ms. Spector's question violated the previous rulings.

The trial judge ordered Ms. Spector not to ask Detective Foote about any statements by the Miami victim to Dr. Hayden (or any other unavailable witness) because any such statements were inadmissible hearsay. We do not address whether the judge ruled correctly that any such statements would be inadmissible. The judge was quite right that Ms. Spector was not free to disregard a ruling she thought to be incorrect: her remedy was to appeal after judgment. But the question at issue here—perhaps, more accurately, the partial question—did not call for hearsay. It did not call for recitation of "a statement other than one made by the declarant while testifying at the trial ..., offered in evidence to prove the truth of the matter asserted." CRE 801(c). Indeed, it did not call for recitation of a statement at all, certainly not for the truth of any matter asserted. The purpose of the question ap-

parently was to establish that the detective had not received information from anyone at the point in his investigation about which he was being questioned that an African–American man had been involved in the assault.[4]

We therefore conclude that the judge abused his discretion in finding that Ms. Spector's partial question constituted contempt, and we vacate the judge's order at trial holding Ms. Spector in contempt. *Cf. In re Marriage of Zebedee,* 778 P.2d 694, 697 (Colo.App.1988) (where record showed that conduct of husband for which court held him in contempt pre-dated court order, finding of contempt was error).

## B. Due Process Violation

As noted, the trial judge did not summarily punish Ms. Spector for the partial question to Detective Foote that it found contemptuous. And, one day before the sentencing hearing, the judge gave Ms. Spector some indication that it considered her "misconduct throughout the trial" as inappropriate and told her that she could address only the issue of sentence at the hearing. At the contempt sentencing hearing, the judge, for the first time, gave "examples" of other conduct at the trial which he found to be contemptuous.

Ms. Spector contends that, in proceeding in this manner, the trial judge deprived her of her due process rights. Specifically, she contends she was entitled to notice and an opportunity to respond concerning any allegedly contemptuous conduct. We agree with this contention.

With one exception, the contemptuous behavior the trial judge identified at the sentencing hearing occurred at trial, and all of it occurred in the judge's presence. Therefore, it was, if contempt at all, "direct" contempt. *See* C.R.C.P. 107(a)(2) (defining direct contempt as "[c]ontempt that the court has seen or heard and is so extreme that no warning is necessary or that has been repeated despite the court's warning to desist"); *see also In re Marriage of Johnson,* 939 P.2d 479, 481–82 (Colo.App.1997).

A trial judge may summarily punish direct contempt if the judge deems such punishment necessary to ensure and preserve decorum in the courtroom. *People v. Holmes,* 967 P.2d 192, 194 (Colo.App.1998); *see* C.R.C.P. 107(b). "Such power is not designed to protect a judge's own dignity, but rather to protect the rights of litigants and the public. It should be invoked only when the judicial process has been seriously affronted or disrupted." *Holmes,* 967 P.2d at 194 (citing *People v. Ellis,* 189 Colo. 378, 540 P.2d 1082 (1975)); *see also Losavio,* 182 Colo. at 183–84, 512 P.2d at 267; *In re Marriage of Johnson,* 939 P.2d at 481 ("Summary punishment for direct contempt is necessitated by a court's need to suppress immediate disturbances in the courtroom so that justice may be properly administered."); *Menin v. County Court,* 697 P.2d 398, 400 (Colo.App.1984). When such concerns exist, ordinary due process requirements do not apply. *See Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954); *see also Pounders v. Watson,* 521 U.S. 982, 988, 117 S.Ct. 2359, 138 L.Ed.2d 976 (1997); *Taylor v. Hayes,* 418 U.S. 488, 497–98, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974). C.R.C.P. 107(b), however, does require the trial judge to make particular findings and to allow the person held in contempt to make a statement in mitigation before punishment is imposed.

Here, the trial judge did not summarily punish Ms. Spector for any of her conduct. (Indeed, the judge acknowledged, in denying Ms. Spector's motion to vacate the finding of contempt, that "this was not a summary determination . . . .") Thus, the usual reasons for dispensing with fundamental requirements of due process did not exist. *Taylor,* 418 U.S. at 497–98, 94 S.Ct. 2697. In circumstances like those here, where final adjudication and sentencing for conduct occurring during trial are deferred until after trial, an attorney "should have reasonable notice of the specific charges and opportunity to be heard in [her] own behalf." *Id.* at 498–99, 94 S.Ct. 2697; *accord In re Karagozian,* 44 Cal.App.3d 516, 118 Cal.Rptr. 793, 796–97

---

4. At oral argument, counsel for the People argued that it is unclear how Ms. Spector would have finished phrasing the question. Any such lack of clarity, however, militates against, not in favor of, a finding of contempt.

(1975) (where the trial judge held public defender in contempt at the end of trial for conduct occurring during trial, but did not give him notice of the precise acts or an opportunity to address those acts before sentencing, contempt finding violated public defender's right to due process).

■ The trial judge did not afford Ms. Spector these rights, and accordingly abused his discretion in holding her in contempt and punishing her therefor. Accordingly, we vacate the trial judge's second order holding Ms. Spector in contempt and remand the matter for further proceedings.

If the trial judge decides to pursue contempt charges against Ms. Spector, he shall provide her with written notice of the precise conduct alleged to constitute contempt. Ms. Spector will be entitled to a hearing on any such charges before an adjudication of contempt or sentencing, though a full-scale trial is not required. *See Taylor*, 418 U.S. at 499, 500 n. 9, 94 S.Ct. 2697. Ms. Spector must be given the opportunity to be heard on the merits of the specific charges, not merely in mitigation of punishment. *Id.* at 499, 94 S.Ct. 2697.

## C. Different Judge

Ms. Spector also contends that the trial judge should have recused himself from the contempt proceedings. Though we have vacated the orders for other reasons, we address this issue because of the possibility that the trial judge will pursue contempt charges on remand. We conclude that if the trial judge does so, the matter must be heard by another judge.

C.R.C.P. 107(d)(1) provides that in an indirect contempt proceeding initiated by a judge, the accused must be informed of her right to have the action heard by another judge. Where the judge proceeds summarily on direct contempt, a hearing before another judge is not necessarily required. *See* C.R.C.P. 107(b); *Sacher v. United States*, 343 U.S. 1, 6–13, 72 S.Ct. 451, 96 L.Ed. 717 (1952); *Smith v. State*, 893 N.E.2d 1149, 1153–54 (Ind.Ct.App.2008). But C.R.C.P. 107 is silent on whether an accused has a right to have a charge of direct contempt that is not summarily sanctioned heard by a judge other than the trial judge.

■ We conclude that an accused is not necessarily entitled to have the matter heard by a different judge. Rather, in determining whether a hearing before a different judge is required, the inquiry should focus on whether the circumstances show actual bias or the appearance of bias. *See Taylor*, 418 U.S. at 501, 94 S.Ct. 2697 ("the inquiry must be not only whether there was actual bias on [the trial judge's] part, but also whether there was 'such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused'"; quoting in part *Ungar v. Sarafite*, 376 U.S. 575, 588, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)).

■ Some conduct may constitute such a personal attack on the judge that he may be unable, realistically speaking, to dispassionately adjudicate the matter. "But contemptuous conduct, though short of personal attack, may still provoke a trial judge and so embroil him in controversy that he cannot 'hold the balance nice, clear, and true between the state and the accused....'" *Id.* (quoting in part *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749 (1927)); *see Mayberry v. Pennsylvania*, 400 U.S. 455, 463–64, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971) ("Where ... [the trial judge] does not act the instant the act is committed, but waits until the end of the trial, on balance, it is generally wise where the marks of the unseemly conduct have left personal stings to ask a fellow judge to take his place."); *see also Offutt*, 348 U.S. at 13–17, 75 S.Ct. 11 (holding that a judge who has exhibited personal feeling against a lawyer may not adjudicate even summary direct contempt).

■ Thus, for example, a contempt charge should be heard by a judge other than the trial judge when the trial judge became "embroiled in a running controversy" with the accused. *Taylor*, 418 U.S. at 501, 94 S.Ct. 2697; *accord In re Estate of Elliott*, 993 P.2d 474, 481 (Colo.2000). And a different judge should preside where it appears that the trial judge has prejudged the matter.

*See In re Estate of Elliott*, 993 P.2d at 481–82.

We also recognize that some appearance of bias is inherent in any situation in which the trial judge effectively acts as both prosecutor and adjudicator. This concern apparently is at least part of the reason for the rule entitling an accused to a different judge in indirect contempt proceedings initiated by a judge, at least where punitive sanctions are possible. C.R.C.P. 107(d); *see Harthun v. Dist. Court*, 178 Colo. 118, 123, 495 P.2d 539, 542 (1972) ("the semblance of due process is a sham when the judge is both prosecutor and judge"; indirect contempt). Nonetheless, the nature of direct contempt—being of a type personally observed by the trial judge—is such that a different judge need not be assigned in all cases where direct contempt is not summarily adjudicated. The driving consideration must be whether the proceeding bears the mark of fundamental fairness to the accused, both in fact and in appearance. *See Ungar*, 376 U.S. 575, 84 S.Ct. 841 (trial witness was not entitled to have a judge other than the trial judge preside over his contempt hearing, conducted after the trial, where the witness's conduct did not include personal attacks against the judge and there was no indication the judge lacked impartiality or had become personally embroiled in a dispute with the witness).

■ After carefully reviewing the record, we conclude that on remand any contempt charge against Ms. Spector arising out of her representation of Michael Lee Jones must be heard by a judge other than the trial judge. We reach this conclusion for the following reasons:

- Though the contempt identified by the trial judge at the sentencing hearing does not include personal attacks on the judge, the record shows several combative exchanges between the judge and Ms. Spector. The judge ad-

monished Ms. Spector repeatedly. These conflicts happened with sufficient frequency that it appears the judge became "embroiled in a running controversy" with Ms. Spector. *See Taylor*, 418 U.S. at 501 [94 S.Ct. 2697]; *In re Estate of Elliott*, 993 P.2d at 481.

- Before the start of the third day of the trial, the trial judge accused Ms. Spector of repeatedly violating court orders and the Rules of Professional Conduct. The judge then said: "Because of your conduct and the fact that the Court is no longer able to accept your word as an officer of the Court, offers of proof are no longer acceptable, because you cannot simply be trusted that your word is your—your word holds any meaning to this Court." This clearly indicates that the trial judge has already determined that Ms. Spector is not credible.

- The trial judge has already found Ms. Spector in contempt for a variety of conduct. As a practical matter, it would be difficult for anyone to set aside such a judgment and decide the matter afresh.

- Before the sentencing hearing, the trial judge sent a letter of complaint to the Office of Attorney Regulation Counsel alleging that Ms. Spector had violated the Rules of Professional Conduct.[5]

- The trial judge has already once refused to allow Ms. Spector to be heard on the merits of the alleged contempt (except as to the partial question to Detective Foote).

- During trial, the trial judge ordered that Ms. Spector would no longer be allowed to appear in his courtroom. At the sentencing hearing, the trial judge said that Ms. Spector had conducted herself inappropriately in two other cases in his courtroom. And the judge

---

5. We do not hold that the trial judge was required to recuse himself from the case merely because he sent the letter of complaint to OARC. *Compare Watson v. Cal–Three, LLC*, 254 P.3d 1189, 1192 (Colo.App.2011) (judge was not required to recuse himself from the case after he sent a letter of complaint to OARC concerning a party), *with* Colo. Supreme Ct. Judicial Ethics Advisory Bd. Opinion 2004–01 (a judge's report of an attorney's misconduct in a case pending before the judge requires that the judge disqualify himself in that case). We hold only that the trial judge's sending of the letter here is one factor which leads us to conclude that the contempt proceeding must be heard by another judge.

said that he had spoken with other judges about Ms. Spector's conduct in their courtrooms. All of this suggests a degree and depth of conflict such that a neutral observer might reasonably question the judge's ability to be impartial.

We specifically reject the trial judge's assessment that he must decide the contempt matter because he witnessed the alleged contempt and therefore it would be "impossible" for another judge to decide what punishment to impose. The proceedings here were on the record. To the extent that anything relevant occurred off the record, or that anything that occurred on the record requires explanation, the trial judge can testify as needed. As for the ability to impose appropriate punishment, we observe that trial judges routinely impose punishment for behavior they did not witness, in both criminal cases and contempt proceedings.

To be clear, we do not question the trial judge's integrity. Nor do we question the veracity of his statements denying any ill will toward Ms. Spector. The record here does not clearly show personal enmity on the trial judge's part toward Ms. Spector. But under the circumstances here, assignment of any contempt charge to another judge is necessary to assure that the proceeding both comports with and appears to comport with notions of fundamental fairness deeply rooted in our system of justice.

The orders holding Ms. Spector in contempt are vacated, and the case is remanded for further proceedings consistent with this opinion.

Judge ROY and Judge LOEB concur.