The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 27, 2021

## 2021COA71

**No. 18CA0332, *People v. Scott* — Constitutional Law — Sixth Amendment — Right to Trial by Jury; Juries — Jury Nullification**

A division of the court of appeals considers whether a pro se defendant has a constitutional right to offer testimony or argument about jury nullification.  The division concludes that (1) no constitutional right to jury nullification exists; (2) a district court does not abuse its discretion by preventing a defendant from urging jury nullification; and (3) a district court does not abuse its discretion by warning a defendant that he may be sanctioned for contempt of court if he violates the court's order not to urge jury nullification.  Accordingly, the division affirms the judgment of conviction.

Court of Appeals No. 18CA0332
Larimer County District Court No. 17CR1008
Honorable Julie Kunce Field, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Charles Raheen Scott,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE YUN
J. Jones and Navarro, JJ., concur

Announced May 27, 2021

Philip J. Weiser, Attorney General, Brian M. Lanni, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jacob B. McMahon, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1      A jury has the discretionary power to acquit a defendant, even if each juror believes the defendant to be guilty according to the law and the evidence. This is called jury nullification. While appellate courts recognize that juries have this *de facto* power, they uniformly agree that trial courts should not encourage jury nullification. This is because this *de facto* power is at odds with other foundational features of the jury system: the historical allocation of responsibilities under which the court determines the law and the jury the facts; the oath that jurors take to "well and truly try the matter before the court, and render a true verdict, according to the evidence and the law"; and the court's instructions to the jury that it must follow the law even it disagrees with the law or does not understand the reasons for the law. COLJI-Crim. B:01, E:01 (2020).

¶ 2      In this case, Charles Raheen Scott, while testifying in his own defense, tried to ask the jury to exercise its nullification power and acquit him of attempting to possess a controlled substance with intent to distribute. The district court interrupted his testimony, ordered him to stop testifying about jury nullification, and warned him that he could be held in contempt if he continued to discuss

1

jury nullification. On appeal, Scott argues that the court's interruption violated his constitutional rights. But Scott had no constitutional right to testify about jury nullification. Nor did the court's interruption impair his constitutional rights to self-representation or to testify. Accordingly, we affirm the judgment of conviction.

## I.     Background

¶ 3      After intercepting a suspicious package, a United States postal inspector conducted a consensual "knock and talk" at the address on the package. Scott answered the door. He told the inspector that the addressee — his child's mother — was not home but that he could sign for the package. The inspector, however, told Scott that he could not sign for the package. Scott then admitted that the package was for him and that it contained cocaine. When the inspector opened the package, he found about forty-four grams of cocaine inside a stuffed animal. Fort Collins police immediately arrested Scott, and he was charged with attempted possession of a schedule I or II controlled substance with intent to manufacture or distribute, in violation of sections 18-18-405(1), 18-18-405(2)(b)(I)(A), and 18-2-101, C.R.S. 2020.

¶ 4     Scott pleaded not guilty and proceeded to trial, where he represented himself.  In his opening statement, Scott did not deny attempting to possess cocaine.  But he denied that he committed a crime because, he explained, cocaine should be legal "for the same reason that alcohol is legal."  After the prosecution rested, he testified in his own defense.  He said that he is a right-leaning Libertarian and that he believes that a drug transaction between consenting adults is not a crime because it does not victimize anyone.  He then started to talk about the history of jury nullification and how, during Prohibition, juries routinely decided not to punish bootleggers "despite the fact that those drug dealers were factually guilty of breaking the law."

¶ 5     Before Scott could say the words "jury nullification," however, the district court intervened:

> MR. SCOTT: . . . . Wow.  What else can I say.
> I'm not sure — oh, like I said earlier, there
> were a number of people in our history, they
> have voted not guilty on behalf of defendants,
> and those defendants have gone free despite
> the fact that they were factually guilty of
> breaking the law.  And what that process is
> called is —
>
> THE COURT: Just a moment.  Counsel
> approach.

(The following proceedings were had in low tones at the bench:)

THE COURT: I'll caution you, you're about to talk to the jury about what's called jury nullification. I'm not going to allow that. It's not appropriate.

MR. SCOTT: Does inappropriate mean illegal?

THE COURT: I'm not going to allow that. You were advised of this earlier as to jury nullification.[1]

MR. SCOTT: I don't understand, Your Honor.

THE COURT: I'm not allowing that. That's not appropriate. You're inviting this jury to violate their oath. I'm not going to allow you to do that.

I'm not going to allow you to do that, give you an opportunity — Mr. Scott, I will give you an opportunity later to make a record on that after the jury is done with — after you're done with your testimony. Okay? But I'm not going to allow you to invite this jury to violate their oath.

Do you have any other testimony that you want to provide?

MR. SCOTT: I don't —

THE COURT: We are not going to invite the jury to violate their oath and to discard their

---

[1] It is not clear from the record what this advisement contained.

4

oath.  Do you understand that?  That was my order to you.  I'm ordering you —

MR. SCOTT: You still haven't explained to me why it's not permissible.  You said that it's inappropriate, but you're not saying that it's illegal, I do not have the right to do that.  Why do I not have the right to do it?

THE COURT: Not in this courtroom, you do not have the right in this trial to violate their oath.

MR. SCOTT: If I can't do it in this courtroom, then where can I do it?

THE COURT: Mr. Scott, I will not allow — if you violate my order, this is a direct order of the Court, I will consider you to be in contempt of Court.  Do you understand that?

MR. SCOTT: What does that mean?

THE COURT: In fact, Mr. Scott, I've let you go quite — what it means is that you're violating a court order and you are in contempt of Court.  If you are in direct violation of a court order, I can make a determination whether or not you should be sanctioned.  That sanction could be a period of time of up to six months in jail for violating a direct order of this Court.  Do you understand that, sir?

MR. SCOTT: I do.

THE COURT: Okay.  Mr. Scott, I've already let you go quite a ways in terms of information that was not directly relevant to the charges here.  I've given you quite a lot of leeway.  I'm not going to give you leeway to invite this jury

5

to violate their oaths. Do you understand that you are not to testify in that regard?

MR. SCOTT: Okay.

¶ 6 During cross-examination, Scott admitted that he knew the package contained cocaine, that he had ordered the cocaine, and that he had intended to sell it.

¶ 7 The court then instructed the jury. As pertinent here, the court said,

> It is my job to decide what rules of law apply to the case. While the attorneys may comment on some of these rules, you must follow the instructions I give you. Even if you disagree with or do not understand the reasons for some of the rules of law, you must follow them. No single instruction describes all the law which must be applied; the instructions must be considered together as a whole.
>
> During the trial, you received all of the evidence that you may properly consider in deciding the case. Your decision must be made by applying the rules of law that I give you to the evidence presented at trial. Remember, you must not be influenced by sympathy, bias or prejudice in reaching your decision.

After describing the elements of attempting to possess a controlled substance, the court also told the jury that, "[a]fter considering all the evidence, if you decide the prosecution has proven each of the

elements beyond a reasonable doubt, you should find the defendant guilty." Scott did not object to these instructions.

¶ 8 In his closing argument, Scott reiterated what he had said in his testimony and his opening statement: that drug laws are "immoral and also illegal" because they infringe on individual liberty. Then, while the jury deliberated, the court gave Scott a chance to make his record:

> My only question is why couldn't I mention words juror nullification or make the point or allow the jury to hear that considering the fact that jury nullification, to my knowledge, is not illegal, and it's, to my knowledge, it's a part of our country's history, founding fathers used it, used throughout history, Colorado's history, to my knowledge. So I don't see why it was inappropriate, quote, unquote, for me to mention it.

The court replied, "Okay," and the prosecutor rested "on well-established law."

¶ 9 The jury found Scott guilty of attempted possession of a controlled substance with intent to distribute. The court sentenced Scott to two years in prison plus one year on parole.

## II.    Analysis

¶ 10    Scott makes three arguments on appeal.  First, he argues that he had a constitutional right to tell the jurors that they had the discretionary power to acquit him notwithstanding the law and the evidence.  Second, he argues that the district court violated his constitutional right to a jury trial when it prevented him from testifying about jury nullification.  Third, he argues that the district court violated his constitutional rights to self-representation and to testify by threatening to jail him if he revealed the jury's acquittal power.  We address each contention in turn.

### A.    Jury Nullification

¶ 11    Scott first argues that he had a constitutional right to ask the jury to acquit him notwithstanding the law and the evidence and that the district court violated this right by preventing him from telling the jurors of their acquittal power.  We disagree.

#### 1.    Standard of Review

¶ 12    We review an alleged violation of constitutional rights de novo. *People v. Janis*, 2018 CO 89, ¶ 14.

8

## 2. No Constitutional Right to Jury Nullification

¶ 13   Jury nullification is a jury's "knowing and deliberate rejection of the evidence or refusal to apply the law because the result dictated by law is contrary to [each] juror's sense of justice, morality, or fairness." *People v. Waller*, 2016 COA 115, ¶ 57 (quoting *State v. Nicholas*, 341 P.3d 1013, 1015 (Wash. Ct. App. 2014)).  Jury nullification occurs when a jury acquits a defendant even though the members of the jury believe the defendant is guilty. *Id.*

¶ 14   This doctrine's roots can be traced to the early American colonial days.  *Id.* at ¶ 58.  Its historical roots can be explained by (1) the near-total absence of an established legal profession; (2) the pervasive influence of natural rights philosophy; and (3) the shared experience of living under — and then rebelling against — a tyrannical government.  *Id.* (citing *State v. Hatori*, 990 P.2d 115, 120 (Haw. Ct. App. 1999)).  It is also said to be rooted in the Sixth Amendment's guarantee of jury trials in criminal cases, which includes the right to have a jury, rather than a judge, reach "the requisite finding of 'guilty.'"  *Id.* (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993)).

¶ 15 In *Sparf v. United States*, 156 U.S. 51, 74 (1895), the United States Supreme Court stated that juries "have the physical power to disregard the law, as laid down to them by the court," but they do not "have the moral right to decide the law according to their own notions or pleasure." The Court concluded that the trial court had properly given a supplemental instruction informing the jury "that, in view of the evidence, the only verdict the jury could under the law properly render would be either one of guilty of the offense charged, or one of not guilty of the offense charged." *Id.* at 63, 99-100. In doing so, the Court said that it "must hold firmly to the doctrine that in the courts of the United States it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence." *Id.* at 102. Were it otherwise, juries would "become a law unto themselves," such that "our government [would] cease to be a government of laws, and [would] become a government of men." *Id.* at 101, 103.

¶ 16 Following *Sparf*'s lead, federal circuit courts have consistently disapproved of informing the jury of its power to nullify:

- In *United States v. Drefke,* 707 F.2d 978, 982 (8th Cir. 1983), the Eighth Circuit stated that, since *Sparf,* "federal courts have uniformly recognized the right and duty of the judge to instruct the jury on the law and the jury's obligation to apply the law to the facts, and that nullification instructions should not be allowed."

- In *United States v. Sepulveda,* 15 F.3d 1161, 1190 (1st Cir. 1993), the First Circuit similarly stated that, "although jurors possess the raw power to set an accused free for any reason or for no reason, their duty is to apply the law as given to them by the court." While "jurors may choose to flex their muscles, ignoring both law and evidence in a gadarene rush to acquit a criminal defendant, neither the court nor counsel should encourage jurors to exercise this power." *Id.*

- In *United States v. Thomas,* 116 F.3d 606, 615 (2d Cir. 1997), the Second Circuit likewise explained that "the power of juries to 'nullify' or exercise a power of lenity is just that — a power; it is by no means a right or

11

something that a judge should encourage or permit if it is within his [or her] authority to prevent."

- In *United States v. Davis*, the Seventh Circuit recognized that "[j]ury nullification is a fact, because the government cannot appeal an acquittal," but "it is not a right, either of the jury or of the defendant." 724 F.3d 949, 954 (7th Cir. 2013) (quoting *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996)). "Although jury nullification is 'a natural and at times desirable aberration under our system, it is not to be positively sanctioned by instructions'" because "explicit instructions sanctioning such action pose too great a threat to the rule of law." *Id.* at 954-55 (quoting *United States v. Anderson*, 716 F.2d 446, 449-50 (7th Cir. 1983)).

- In *United States v. Kleinman*, the Ninth Circuit similarly explained that though juries have the power to nullify, they do not have a right to nullify and courts have the duty to forestall or prevent nullification because "it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to

be from the evidence." 880 F.3d 1020, 1031 (9th Cir. 2017) (quoting *Merced v. McGrath*, 426 F.3d 1076, 1079 (9th Cir. 2005)).

- And in *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983), the District of Columbia Circuit concluded that a trial court properly refused to give the defendant's requested instruction on jury nullification because the defendant's "assertion that an instruction on jury nullification is the 'best assurance against its arbitrary exercise' . . . has no support in the law and flies in the face of common sense." (Citation omitted.)

¶ 17 In sum, the prevailing view among federal courts is that nullification is only a *de facto* power that the jury has and not a right that courts should encourage the jury to exercise. The reason jurors have this *de facto* power is not because nullification is inherently desirable. *See Thomas*, 116 F.3d at 614 (categorically rejecting "the idea that, in a society committed to the rule of law, jury nullification is desirable"). Rather, jurors have this raw power because "the government cannot appeal an acquittal" and any danger of jury nullification is outweighed by the need to protect jury

verdicts from external scrutiny. *Davis*, 724 F.3d at 954; *cf.* CRE 606(b) (generally precluding juror testimony regarding deliberations). Thus, when "prevent[ing] defiant disregard of the law or evidence comes into conflict with the principle of secret jury deliberations, we are compelled to err in favor of the lesser of two evils — protecting the secrecy of jury deliberations at the expense of possibly allowing irresponsible juror activity." *Thomas*, 116 F.3d at 623; *see also Merced*, 426 F.3d at 1079 ("The power to nullify is reenforced by a jury's freedom from recrimination or sanction for exercising this power after the verdict has been reached.").

¶ 18     Colorado law is consistent with these cases. The Colorado Constitution preserves the historical allocation of responsibilities under which courts determine the law and juries determine the facts. *Dill v. People*, 94 Colo. 230, 234-35, 29 P.2d 1035, 1037 (1933). Consistent with this allocation, the model jury instructions direct the court to instruct the jury at the close of the evidence in every case: "It is my job to decide what rules of law apply to the case. . . . [Y]ou must follow the instructions I give you. Even if you disagree with or do not understand the reasons for some of the rules of law, you must follow them." COLJI-Crim. E:01; *see also*

14

*Alvarez v. People*, 653 P.2d 1127, 1131 (Colo. 1982) ("Jurors are required to follow only the law as it is given in the court's instructions to the jury, whether or not they personally agree or disagree with such instructions."). Jurors who disregard the judge's instructions or the evidence violate their sworn oaths to "well and truly try the matter before the court, and render a true verdict, according to the evidence and the law." COLJI-Crim. B:01. Indeed, a trial court must grant a challenge for cause if a prospective juror is unable or unwilling to follow the court's instructions on the law. *Morrison v. People*, 19 P.3d 668, 672 (Colo. 2000).

¶ 19 Our case law on jury nullification makes the same point. In *People v. Wilson*, 972 P.2d 701, 705 (Colo. App. 1998), the defendant argued that the prosecutor, in response to defense counsel's closing argument, misstated the law by informing the jury that it did not have the power to nullify. The division reviewed case law from other jurisdictions and determined that "most courts have held that trial courts should not instruct the jury that it may nullify a verdict of guilt" and that the "trial court can, in its discretion, preclude counsel from arguing jury nullification." *Id.* at 706.

Although the division cited the "tension between the jury's *de facto* power of nullification and the jurors' duty to follow the court's instructions," it concluded that "the issue of nullification is best avoided" in closing arguments. *Id.*

¶ 20 And more recently, in *Waller*, ¶ 76, a division of this court held that "courts need not promote nullification." In that case, the defendant argued that the reasonable doubt instruction telling the jury that it "will" find the defendant guilty if each element is proved beyond a reasonable doubt was unconstitutional because it abolished the jury's power to nullify. *Id.* at ¶¶ 51-52. The division noted that "[w]hile a jury does have the power to nullify, there is no right to jury nullification." *Id.* at ¶ 59. As a result, "a defendant is not entitled to a jury instruction informing jurors that they have the inherent power to nullify a verdict of guilt," and "a trial court has discretion to preclude counsel from arguing jury nullification." *Id.* Thus, the division rejected the defendant's contention that the trial court's reasonable doubt instruction abolished the jury's power to nullify. *Id.* at ¶ 77.

¶ 21 We therefore conclude that "there is no constitutional right to jury nullification." *Kleinman*, 880 F.3d at 1035; *see also, e.g.,*

*United States v. Wilkerson*, 966 F.3d 828, 834 (D.C. Cir. 2020) ("[T]he Sixth Amendment provides no right to a jury instruction on nullification."). And we agree with *Wilson*, 972 P.2d at 706, that this issue is "best avoided" in closing arguments; with *Waller*, ¶ 76, that "courts need not promote nullification"; and with the vast majority of jurisdictions that courts should not encourage jury nullification. Accordingly, any argument or testimony urging jury nullification has no place in jury trials.

### B. Testimony About Jury Nullification

¶ 22 We now turn to Scott's argument that the district court violated his right to a jury trial when it prevented him from testifying that the jury could acquit him notwithstanding the law and evidence. We are not persuaded.

#### 1. Standard of Review

¶ 23 We review a district court's decision to exclude testimony for an abuse of discretion. *People v. Smalley*, 2015 COA 140, ¶ 18. A court "abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law." *Id.*

17

## 2. Testimony was Inadmissible

¶ 24     To be admissible, evidence must be relevant.  *People v. Greenlee*, 200 P.3d 363, 366 (Colo. 2009).  Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *Id.* (quoting CRE 401).  "In determining whether the challenged evidence relates to a fact of consequence to the determination of th[e] case, we must necessarily look to the elements of the crime charged."  *People v. Carlson*, 712 P.2d 1018, 1022 (Colo. 1986).  If the evidence has no bearing on any of the elements of the crime or any permissible affirmative defense, it is irrelevant and inadmissible.  *Id.*; *see also Roberts v. People*, 2017 CO 76, ¶ 22 ("[W]hen the evidence presented properly raises the issue of an affirmative defense, the affirmative defense effectively becomes an additional element of the charged offense . . . .").

¶ 25     Here, the district court properly intervened and precluded Scott from testifying about jury nullification.  Scott was charged with attempted possession of a controlled substance with intent to distribute.  §§ 18-2-101(1), 18-18-405(1)(a).  Scott's testimony

18

about the history and concept of jury nullification had no bearing on any of the elements of this offense or any permissible affirmative defense. In fact, testimony encouraging "nullification is by definition irrelevant, and thus inadmissible, regardless of what other evidence might be introduced at trial." *In re United States*, 945 F.3d 616, 630 (2d Cir. 2019). Accordingly, Scott was "not entitled to present evidence which is irrelevant for any purpose other than to provoke the finder of fact to disregard the law." *United States v. Lucero*, 895 F. Supp. 1421, 1426 (D. Kan. 1995).

¶ 26 The district court therefore did not abuse its discretion by precluding Scott from urging jury nullification.

## C. Court's Warning

¶ 27 Scott next asserts that the district court violated his constitutional rights to self-representation and to testify by threatening to hold him in contempt if he violated the court's order. We again disagree.

### 1. Standard of Review

¶ 28 The determination of whether certain conduct constitutes contempt is within the district court's sound discretion. *Hill v. Boatright*, 890 P.2d 180, 187 (Colo. App. 1994), *aff'd in part and*

*rev'd in part on other grounds sub nom. Boatright v. Derr*, 919 P.2d 221 (Colo. 1996). Thus, we review a district court's ruling for an abuse of discretion. *People v. Jones*, 262 P.3d 982, 987 (Colo. App. 2011).

### 2. Contempt Power

¶ 29 "A court may hold a party in contempt for any conduct which interferes with the court's administration of justice, is derogatory to the dignity of the court, or tends to bring the judiciary into disrespect." *Id.* (quoting *People v. Aleem*, 149 P.3d 765, 774 (Colo. 2007)). "As relevant here, a court may hold a party or other person before the court in contempt for violating a court order." *Id.*; *see also* C.R.C.P. 107(a)(1) (defining contempt to include "disobedience . . . by any person to . . . any lawful . . . order of the court"). A party is not free to disregard a ruling he or she thinks incorrect; the party's remedy is to appeal after the judgment. *Jones*, 262 P.3d at 987.

¶ 30 Scott argues that the district court improperly threatened to hold him in contempt if he testified about jury nullification. But as discussed above, Scott did not have a right to offer such testimony, and the district court properly excluded it. When Scott questioned

20

the legitimacy of the court's ruling, the district court warned Scott that he would be held in contempt and possibly jailed if he insisted on violating the court's order. This was proper.

¶ 31 We are not persuaded otherwise by Scott's argument that his constitutional right to self-representation entitled him to tell the jury about its acquittal power. "By electing to represent himself the defendant subjected himself to the same rules, procedures, and substantive law applicable to a licensed attorney." *People v. Romero*, 694 P.2d 1256, 1266 (Colo. 1985). "A pro se defendant cannot legitimately expect the court to deviate from its role of impartial arbiter and accord preferential treatment to a litigant simply because of the exercise of the constitutional right of self-representation." *Id.* Thus, given that the district court had the discretion to preclude counsel from arguing jury nullification, *Wilson*, 972 P.2d at 706, it also had the discretion to preclude Scott from testifying or arguing about jury nullification.

¶ 32 Nor are we persuaded by Scott's argument that the district court violated his constitutional right to testify by threatening to hold him in contempt if he violated the court order. Scott had no constitutional right to introduce irrelevant evidence. *People v. Villa,*

21

240 P.3d 343, 353 (Colo. App. 2009). "[T]he right to present a defense is not absolute; it requires only that the accused be permitted to introduce all relevant and admissible evidence." *People v. Rodriguez*, 209 P.3d 1151, 1160 (Colo. App. 2008), *aff'd*, 238 P.3d 1283 (Colo. 2010). Because Scott did not have a right to urge jury nullification, the district court did not err by invoking its authority to hold him in contempt if he continued to discuss the topic.

### III.    Conclusion

¶ 33    For the foregoing reasons, we affirm the judgment of conviction.

JUDGE J. JONES and JUDGE NAVARRO concur.