The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Rory D. WILSON, Defendant–Appellant.

No. 97CA1427.

Colorado Court of Appeals, Div. V.

Sept. 3, 1998.

As Modified on Denial of Rehearing Oct. 29, 1998.

Certiorari Denied March 1, 1999.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.1997.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Jane G. Ebisch, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Anthony Viorst, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Rory D. Wilson, appeals a judgment of conviction entered on jury verdicts finding him guilty of possession of a weapon by a previous offender and prohibited use of a weapon. We affirm.

On March 10, 1996, a sheriff's deputy who was investigating a reported road driving hazard observed a pick-up truck partially off the road. Defendant was in the front of the truck and a rifle was next to him in the passenger seat. Upon being ordered out of the vehicle, defendant informed the officer that he had a prior felony for burglary. The charges here at issue followed.

## I.

Defendant contends the court erred in instructing the jury on the elements of prohibited use of a weapon while intoxicated. He maintains that the court's refusal to instruct the jury that the *mens rea* of knowingly was an element of the offense constituted reversible error. We disagree.

Section 18–12–106(1), C.R.S.1997, contains the elements of the offense of prohibited use of a weapon. It provides that a person commits a class 2 misdemeanor if:

(a) He *knowingly* and unlawfully aims a firearm at another person; or

(b) *Recklessly* or with criminal negligence he discharges a firearm or shoots a bow and arrow; or

(c) He *knowingly* sets a loaded gun, trap, or device designed to cause an explosion upon being tripped or approached,

and leaves it unattended by a competent person immediately present; or·

(d) He has in his possession a firearm while he is under the influence of intoxicating liquor or of a controlled substance ...

(e) He *knowingly* aims, swings, or throws a throwing star or nunchaku ... at another person .... (emphasis added)

Defendant asserts that, because the statute is silent with respect to the *mens rea* applicable to § 18–12–106(1)(d), C.R.S.1997, and the General Assembly did not specifically classify this offense as a strict liability offense, the element of knowingly must be included. We are not persuaded.

In questions of statutory interpretation, our task is to ascertain and give effect to the intent of the General Assembly. In determining that intent, it is useful to consider the plain language of the statute, *People v. District Court,* 713 P.2d 918 (Colo.1986), as well as the problem addressed by the legislation and the statutory remedy created to cure the problem. *Charnes v. Boom, supra.* See also *People v. Garcia,* 197 Colo. 550, 595 P.2d 228 (1979) (recognizing that it is reasonable for the General Assembly to regulate the possession of firearms by persons under the influence of alcohol or drugs). Also, the statutory scheme must be read and considered as a whole to give consistent, harmonious, and sensible effect to all its parts. *Charnes v. Boom,* 766 P.2d 665 (Colo.1988).

Applying these principles, we conclude that § 18–12–106(1)(d) is a strict liability offense and that the term "knowingly" is not included among its elements.

When the statute is considered as a whole, its plain language suggests that the General Assembly did not intend to include a specific *mens rea* within the elements of § 18–12–106(1)(d). Subsections 18–12–106(1)(a), (c), and (e), C.R.S.1997, specifically include the term "knowingly" among their elements, and § 18–12–106(1)(b), C.R.S.1997, specifically states that liability will attach if a person acts recklessly or with criminal negligence. Only § 18–12–106(1)(d) is silent with respect to a culpable mental state. This suggests that the General Assembly intended to punish anyone who simply possessed a firearm while

intoxicated, even if that person did not do so knowingly.

This conclusion is bolstered by the legislative history of the statute. In 1977, subsections (a) and (c) of the statute were amended. The term "knowingly," which did not appear in either subsection before 1991, was added to both subsections that year. Colo. Sess. Laws 1977, ch. 224, §18–12–106 at 971. The language of subsection (d) was also amended twice, first in 1981 and again in 1982. Yet neither amendment added "knowingly" to the provision. Colo. Sess. Laws 1981, ch. 128 at 738; Colo. Sess. Laws 1982, ch. 171 at 623.

Had the General Assembly intended that § 18–12–106(1)(d) be either a general or specific intent crime, it could have added a specific *mens rea* during the various times the statute was amended. The fact that no *mens rea* was added satisfies us that it was the intent of the General Assembly that the conduct described in § 18–12–106(1)(d) be a strict liability offense.

Therefore, we conclude the trial court did not err in refusing to instruct the jury that "knowingly" was an element of the offense.

In view of our conclusion that possession of a firearm while intoxicated is a strict liability offense, we need not address defendant's contention that the prosecution failed to prove he knowingly committed the offense.

## II.

Defendant next contends the trial court erred in denying his motion to dismiss the charges against him based on a violation of his statutory right to speedy trial. Again, we disagree.

On July 3, 1996, defendant entered not guilty pleas to the charges and trial was originally scheduled to begin on November 4, 1996.

On November 1, 1996, the court rescheduled the trial because of docket congestion and reset it for December 16, 1996. Two other criminal trials unrelated to this case were also scheduled to begin on December 16th, and the same defense counsel, a public defender, was representing the defendants in all three cases. The parties appeared in court on December 16, 1996, but the trial court heard the other two cases first which necessitated the rescheduling of defendant's trial for January 2, 1997. This was one day before the speedy trial period expired.

When defense counsel informed the trial court he would be on vacation January 2nd, the court asked counsel to find another public defender from the same office to take over the case so the trial could begin on the date scheduled. Instead, ten days later defense counsel filed a motion to dismiss the charges against the defendant. The motion alleged that because of vacations, other jury trials, and problems in the coverage of other matters, no attorneys in his office were available to represent the defendant on January 2nd. The motion further asserted that the case should be dismissed because the speedy trial period would expire on January 3rd, and defendant could not be brought to trial before that date.

The trial court denied the motion to dismiss, finding that the trial could have gone forward within the original speedy trial period, but for defense counsel's unavailability. The court then treated the motion as a request for a continuance of defendant's trial date. It set a new trial date for May 19, 1997, and the case proceeded on that date.

Section 18–1–405, C.R.S.1997, provides that a defendant is entitled to dismissal of the charges if he or she is not brought to trial within six months from the date a plea of not guilty is entered. However, in computing the time within which a defendant must be brought to trial, the period of any delay caused at the instance of the defendant is excluded from the six month limitation period. Section 18–1–405(6)(f), C.R.S.1997.

■ Thus, if a defendant's attorney requests a continuance of a trial setting and the court in its discretion grants such a continuance, the speedy trial deadline is extended for an additional six months from the date the continuance was granted. Section 18–1–405(3), C.R.S.1997; *People v. Anderson*, 649 P.2d 720 (Colo.App.1982).

■ Here, defendant concedes that his counsel's inability to be present for the trial set to begin on January 2, 1997, was a delay

caused at his instance and, thus, was excludable from the sixth month limitation period. He asserts, however, that the trial court erred in treating defense counsel's inability to be present as a request for a continuance and further erred in extending the speedy trial period for an additional six months on that basis. We conclude, as did the trial court, that defense counsel's motion to dismiss was equivalent to a request for a continuance which extended the speedy trial period for an additional six months.

In *People v. Chavez*, 650 P.2d 1310 (Colo. App.1982), defense counsel advised the court that he would not be available to try the case on the scheduled trial date because of scheduling conflicts, nor was he available until after the expiration of the speedy trial period. A division of this court concluded that the actions of defense counsel were tantamount to a request for a continuance.

Similarly, here, defense counsel was unavailable to try the case the day it was scheduled to begin and also unable to find a replacement from his office to represent the defendant before the expiration of the speedy trial period. Under these circumstances, we conclude that the defendant's motion to dismiss was tantamount to a request for a continuance in order to protect the defendant's Sixth Amendment right to counsel. *See People v. District Court*, 933 P.2d 583 (Colo. 1997) (under some circumstances it is necessary for the trial court to continue a trial beyond the speedy trial period in order to protect a defendant's constitutional rights).

Nor are we persuaded by defendant's claim that *People v. Bell*, 669 P.2d 1381 (Colo.1983), mandates a different result. In *Bell*, defendant was prepared to proceed before the expiration of the speedy trial period, but the trial court ordered additional proceedings which ran beyond the expiration of the speedy trial deadline. In contrast, here, defense counsel was unable to proceed on the scheduled trial date within the speedy trial period. The delay in the trial was due to his scheduling conflicts, thus making it a delay chargeable to the defendant. We therefore conclude the court did not err in extending defendant's speedy trial period for an additional six months.

III.

Defendant next asserts that a misstatement of the law made by the prosecutor during his summation and the court's failure to correct that misstatement constitute reversible error. We disagree that reversal is required.

During his summation, defense counsel urged the jury to find the defendant not guilty of the crime of possession of a weapon by a previous offender based on fundamental fairness. He argued that defendant had already been convicted and punished for the previous crime and that defendant did not know it was unlawful for a previous offender to possess a weapon.

During rebuttal, the prosecutor made the following statement:

> What's not there in the statement of the defense is that we haven't proven the elements of the crime. It is simply a statement that, well, somehow it's not fair to then convict him of the offense even though we have proven the elements to you. *In fact that's a technique called jury nullification* where the evidence has, in fact, been presented to the jury to support a conviction for the charge, but then even though the evidence is there, you ask the jury to basically disregard the evidence and disregard the law and return a finding of not guilty in spite of it. *And that, in fact, would not be correct because you agreed that you would follow the law, follow the instructions.* (emphasis added)

Defendant objected to this comment, arguing it erroneously suggested to the jurors that they did not have the power to nullify what would otherwise be the verdict when, in reality, they did have such power. The trial court overruled defendant's objection, concluding the prosecutor's statement did nothing more than remind the jurors of their duty to follow the instructions based on the evidence placed before them.

Colorado appellate decisions have said little about the issue of jury nullification. *See People v. Stephens*, 837 P.2d 231 (Colo.App. 1992)(not addressing issue of jury nullification raised by the People because it was

moot); *People v. Brandyberry*, 812 P.2d 674, 677 (Colo.App.1990) ("[C]ommon law necessity defense is not available as an instrument for juror nullification of unpopular laws....").

Other jurisdictions have specifically recognized that a jury does have a *de facto* power of nullification, *i.e.*, the power to acquit the defendant regardless of the strength of the evidence against him or her. *See Andrews v. State*, 222 Ga.App. 129, 473 S.E.2d 247 (1996); Leipold, *Rethinking Jury Nullification*, 82 Va. L.Rev. 253 (1996).

However, many decisions have emphasized that the jury also has a duty to follow the court's instructions. *See People v. Smith*, 296 Ill.App.3d 435, 230 Ill.Dec. 712, 694 N.E.2d 681 (1998) (defendant has no right to have the jury defy the law or ignore the undisputed evidence). *See also United States v. Thomas*, 116 F.3d 606, 616 (2d Cir.1997) ("[N]o juror has a right to engage in nullification—and, on the contrary, it is a violation of a juror's sworn duty to follow the law as instructed by the court...."). *But see State v. Bonacorsi*, 139 N.H. 28, 648 A.2d 469 (1994) (recognizing jury nullification as the undisputed power of the jury to acquit, even if its verdict is contrary to law as given by the judge and contrary to the evidence); and *NHJI–Crim.* No. §3.17 (1985) ("Even if you find that the State has proven each and every element of the offense charged beyond a reasonable doubt, you may still find the defendant not guilty if you have a conscientious feeling that a not guilty verdict would be a fair result in this case.").

Because of this tension between the jury's *de facto* power of nullification and the jurors' duty to follow the court's instructions, most courts have held that trial courts should not instruct the jury that it may nullify a verdict of guilt. *See People v. Moore*, 171 Ill.2d 74, 215 Ill.Dec. 75, 662 N.E.2d 1215 (1996). They have further held that the trial court can, in its discretion, preclude counsel from arguing jury nullification. *See Andrews v. State, supra; People v. Moore, supra; State v. Bjerkaas*, 163 Wis.2d 949, 472 N.W.2d 615 (1991). *See also People v. Smith, supra* (trial court did not abuse its discretion by giving supplemental instruction in response to ju-

rors' written question, which arguably negated power of nullification or lenity).

In closing argument, counsel is entitled to argue all reasonable inferences from facts in evidence. *People v. Constant*, 645 P.2d 843 (Colo.1982), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982). Although a prosecutor may not make statements during closing argument which could mislead the jury, *People v. Marin*, 686 P.2d 1351 (Colo.App.1983), a prosecutor is afforded considerable latitude in replying to an argument made by opposing counsel. *People v. Vialpando*, 804 P.2d 219 (Colo.App.1990).

Additionally, the determination whether a prosecutor's statements constitute inappropriate prosecutorial argument is generally a matter within the trial court's discretion. *People v. Moody*, 676 P.2d 691 (Colo. 1984). The trial court must consider those comments in the context of the argument as a whole and in light of the evidence before the jury. *People v. Constant, supra.* Reversal of the conviction is not required if the argument, in all probability, did not influence the jury's result or affect the fairness of the proceeding.

Here, defendant's counsel initially raised a defense in the nature of jury nullification during closing argument, apparently without objection. During the rebuttal, the prosecutor made only a brief and passing reference to nullification.

Accordingly, although the issue of nullification is best avoided, we conclude that the prosecutor's statements here do not require reversal. When viewed in the context of the argument as a whole, they merely reminded the jurors of their duty to follow the court's instructions and to apply the facts and evidence to the instructions in determining guilt or innocence. We further conclude that the trial court properly refused to submit a supplemental instruction to the jury regarding jury nullification.

Judgment affirmed.

Judge VOGT and Judge STERNBERG,* concur.