COLORADO COURT OF APPEALS                                    2016COA115
_____

Court of Appeals No. 14CA1009
City and County of Denver District Court No. 12CR4151
Honorable John W. Madden IV, Judge
Honorable Martin F. Egelhoff, Judge
_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Anthony M. Waller,

Defendant-Appellant.
_____

JUDGMENT AFFIRMED

Division II
Opinion by CHIEF JUDGE LOEB
Sternberg* and Plank*, JJ., concur

Announced August 11, 2016
_____

Cynthia H. Coffman, Attorney General, Patricia R. Van Horn, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Gail K. Johnson, Kathryn D. Stevenson, Alternate Defense Counsel, Boulder,
Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2015.

¶ 1     Defendant, Anthony M. Waller, appeals the judgment of conviction entered on a jury verdict finding him guilty of third degree assault.  On appeal, he contends that (1) his constitutional right to self-representation was violated by the trial court's denials of his requests to represent himself with the assistance of advisory counsel; (2) the trial court abused its discretion by declining his requests for appointment of advisory counsel to assist him in proceeding pro se; and (3) his constitutional rights to due process and a fair trial by an impartial jury were violated by the court's jury instruction on reasonable doubt that allegedly abolished the jury's power to nullify.  We affirm.

I.     Background and Procedural History

¶ 2     Waller was charged with second degree kidnapping, false imprisonment, third degree assault, and menacing for allegedly punching a woman and dragging her back to a motel room where they had been staying.

¶ 3     Due to a material witness not showing up at trial, the prosecution dismissed the false imprisonment and menacing charges.  At the end of the trial, a jury acquitted Waller of second degree kidnapping but found him guilty of third degree assault, a

1

class 1 misdemeanor. The trial court sentenced Waller to two years in the county jail.

¶ 4    This appeal followed.

II.    The Right to Self-Representation and Advisory Counsel

¶ 5    Waller contends that, due to the circumstances of his case, the trial court's failure to appoint advisory counsel to assist him with proceeding pro se violated his federal and state constitutional rights to self-representation. He also contends that the trial court abused its discretion when it denied his requests for advisory counsel to assist him in proceeding pro se. We disagree with both contentions.

A.    Background and Procedural History

¶ 6    We first summarize the lengthy procedural history that pertains to these contentions.

1.    County Court Proceedings

¶ 7    In September 2012, Waller appeared in county court for his second advisement. He told the court that a conflict of interest existed between him and the public defender's office and stated that he wished to proceed pro se but with the assistance of advisory counsel. The county court told Waller that he had the right to

2

proceed pro se, and that it might appoint advisory counsel at a later time if the case proceeded to hearing.

¶ 8     One month later, Waller appeared pro se at a preliminary hearing and asked the court whether it was going to appoint advisory counsel. A public defender conferred with Waller off the record and, afterward, told the court that Waller believed there was a conflict of interest with the public defender's office because he had been represented by the public defender's office in a prior case that was pending before the court of appeals. The public defender told the court that Waller wanted an attorney to represent him and thus wanted the court to appoint Alternate Defense Counsel (ADC). The court appointed ADC to represent Waller and set the case for a status hearing the following week.

¶ 9     Waller appeared with ADC at the status hearing. At both the status hearing and another hearing in November 2012, defense counsel notified the court that Waller wanted to proceed pro se with advisory counsel. The county court ruled during both hearings that Waller could proceed pro se or proceed with counsel representing him, but the court was not going to appoint his counsel to act simply in an advisory manner for a preliminary hearing. Waller

elected to proceed with his counsel representing him at both hearings.

¶ 10    In December 2012, defense counsel filed a motion to withdraw and renewed Waller's request to proceed pro se with the assistance of advisory counsel.  At a later hearing, the county court denied Waller's motion and bound the case over to the district court.

## 2.    District Court Proceedings

¶ 11    During a motions hearing in district court on February 28, 2013, the court addressed a motion Waller had filed requesting to proceed pro se with the assistance of advisory counsel.  Defense counsel argued that Waller had a constitutional right to represent himself if he so desired, and that the court had an interest in appointing advisory counsel for him so he could represent himself effectively and efficiently.  Defense counsel further argued that Waller was intelligent and sophisticated "in terms of [how] these proceedings work," but he recognized that there were layers of complexity where advisory counsel would be useful to Waller.  The prosecutor did not object to Waller proceeding pro se, but did object to him proceeding pro se with the assistance of advisory counsel due to a history of "abusing" advisory counsel in prior cases.

4

¶ 12    After hearing argument by both parties, district court Judge

Madden stated:

> I presume that Mr. Waller has a right to
> represent himself or right to representation by
> an attorney, but as a general matter, he
> doesn't have a right to have both at the same
> time.
>
> A number of Judges take that position, I've
> taken that position several times and
> eventually relented in particular cases where I
> determined it made sense to try veering from
> that rule and, Mr. Waller, it was a nightmare
> each time I've done that. It caused more
> problems for the Court, for the attorneys, for
> the parties, for appellate procedures, to the
> point that on the last time I had done that, I
> said barring some outrageous, unreasonable
> circumstances that I wouldn't otherwise
> expect, I'm not doing this again.
>
> And the position has been that you have a
> right to have an attorney or you have a right to
> represent yourself, but I'm not going to appoint
> ADC counsel to be advisory counsel unless
> there's an actual reason to do it other than
> simply you would like to represent yourself,
> but have the assistance of an attorney and the
> legal knowledge, which is something that you
> don't have a Constitutional Right to do.
>
> . . . [I]n the end, under these circumstances,
> I'm disinclined to grant the advisory counsel
> status.
>
> At the same time, as soon as I say that, this is
> a serious offense, these are significant charges,
> they carry serious impact, so I'm not going to

say no today. I'm going to say I don't think I'm likely to do it . . . but I'm going to go back and look again at the motion, I'm going to look at what I have in the file, review the case law. . . .

¶ 13 Judge Madden stated that he would make a final decision in writing after completing his review of the record and applicable case law. During this hearing, Waller also requested that he receive additional law library time so that he could research and decide whether to proceed pro se. The court stated that it would follow up at a later time on Waller's request.

¶ 14 On March 6, 2013, Judge Madden issued a written order denying Waller's request to proceed pro se with the assistance of advisory counsel. Judge Madden's order stated, in pertinent part:

> If a defendant who [sic] elects to represent himself and proceed *pro se*, he waives his right to counsel and does not have a constitutional right to advisory counsel. Although a court may, nonetheless, choose to appoint advisory counsel upon the request of a defendant, the decision whether or not to make such an appointment lies in the discretion of the court.
>
> In this case, it is alleged that Defendant hit and kicked the victim then dragged the victim into his room and kept her there against her will. The Defendant was identified by both the victim and an independent witness. . . . As such, the case is neither factually nor verbally [sic] complex. The Defendant has prior history

6

and experience with criminal proceedings, and is apparently familiar with legal concepts and procedures. Further, the Defendant has competent, experienced, conflict free counsel, yet he wishes to dismiss that counsel and retain him in an advisory capacity. This would serve only to permit the Defendant to utilize counsel in such a way as to circumvent the authority and discretion to make certain decisions expressly reserved to counsel, or to circumvent the ethical considerations which must guide an attorney's decisions. The Defendant may not pick and choose only those parts of representation that he likes and bypass those parts that he dislikes. In light of all of these considerations, barring a change in circumstances, in the event Defendant elects to represent himself, the Court will not appoint advisory counsel.

(Citations omitted.)

¶ 15     In June 2013, the parties appeared for a suppression hearing, but the hearing centered on the issue of whether Waller would proceed pro se. Waller requested, and the court granted, a one-month continuance of the suppression hearing so he could determine whether he would represent himself and prepare for the suppression hearing if he decided to proceed pro se. Additionally, Waller requested that he receive additional law library access, and a sheriff in the courtroom said he would address the library issue with his captain and get back to the court's clerk.

¶ 16    The district court proceedings were then delayed due to a medical emergency on the part of defense counsel and a later substitution of counsel for Waller.

¶ 17    On November 1, 2013, Waller's substitute ADC filed a motion asserting Waller's continued desire to proceed pro se with the assistance of advisory counsel. Defense counsel argued that the court should appoint advisory counsel for Waller because he had a limited education, he had documented mental illness, and he had made several mistakes when representing himself in the past. Defense counsel also argued in his motion that Waller had been precluded from educating himself to the degree necessary to make his decision whether or not to represent himself due to limited law library access.

¶ 18    At a pretrial conference on November 21, 2013, the district court again addressed Waller's motion to represent himself with the assistance of advisory counsel. When asked whether there were any "additional positions" in terms of Waller's motion, Waller's counsel stated that there were no changed circumstances, but that Waller was somebody who "does need and desire assistance and guidance as much as he also wants to represent himself." The

court informed Waller that he had a right to represent himself and had a right to an attorney, but he did not have a right to advisory counsel. The court scheduled a hearing for the next week to give Waller more time to confer with his counsel and decide whether to represent himself at trial or be represented by his current counsel. When Waller asked for more law library time, Judge Madden denied his request but stated that he would revisit the issue the following week depending on Waller's representation decision.

¶ 19 When the parties appeared before Judge Madden the following week on November 25, 2013, Waller renewed his request to proceed pro se with advisory counsel. Judge Madden noted Waller's renewed request but told him that he could either represent himself or have an attorney represent him. After some discussion with counsel, Waller elected to proceed with his counsel representing him at trial.

¶ 20 In January 2014, the parties appeared before a different district court judge — Judge Egelhoff — for a pretrial hearing. At this hearing, defense counsel stated that Waller might desire to proceed pro se and had requested advisory counsel before but that Judge Madden had denied that request. Judge Egelhoff declined to

address the issue, stating that he had reviewed the record, he had seen that this issue had already been addressed many times by Judge Madden, and he was not "going to reinvent the wheel here."

¶ 21 On March 21, 2015, two and a half weeks before trial, defense counsel filed a renewed motion for Waller to represent himself pro se with the assistance of advisory counsel. This issue was addressed the first day of trial by Judge Egelhoff, who stated that he had read the minute orders in the case and knew that this issue had come up repeatedly before Judge Madden, who had held a hearing, made findings, and issued an order with respect to the issue of Waller's representation. Judge Egelhoff stated that he was "not inclined to go back and relitigate things that Judge Madden has had a hearing on and resolved." Judge Egelhoff then asked Waller if he would like to proceed pro se without advisory counsel or if he wished for his counsel to represent him at trial. Waller chose to proceed to trial with his counsel representing him.

## B. Waller's Constitutional Claim

¶ 22 Waller contends that, due to the circumstances of his case, the trial court violated his federal and state constitutional right to

self-representation by denying his requests for the appointment of advisory counsel to assist him with proceeding pro se.

1. Standard of Review and Applicable Law

¶ 23 "We review de novo whether a defendant was denied the right to self-representation." *People v. Johnson*, 2015 COA 54, ¶ 15. Denial of the right to self-representation is structural error and is not subject to harmless error analysis. *Id.*; *see also People v. Brante*, 232 P.3d 204, 207 (Colo. App. 2009).

¶ 24 "The fundamental right to counsel is guaranteed by the Sixth Amendment to the United States Constitution, and is considered essential to a fair trial." *People v. Arguello*, 772 P.2d 87, 92 (Colo. 1989). "As a corollary to the Sixth Amendment's right to counsel, a defendant has the alternative right to self-representation." *Id.*; *see also Faretta v. California*, 422 U.S. 806, 819-21 (1975). The Colorado Constitution reinforces this right, stating that "the accused shall have the right to appear and defend in person." Colo. Const. art. II, § 16; *Arguello*, 772 P.2d at 92. The right to self-representation "is personal to the defendant and may not be abridged by requiring a defendant to accept a lawyer when he

11

desires to proceed *pro se.*" *Johnson,* ¶ 16 (quoting *People v. Mogul,* 812 P.2d 705, 708 (Colo. App. 1991)).

¶ 25    While the right to self-representation is constitutionally protected, it is "not of the same magnitude as the competing right to counsel." *People v. Abdu,* 215 P.3d 1265, 1267 (Colo. App. 2009). Absent an unequivocal request, courts must "ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation." *Id.* at 1268 (quoting *United States v. Frazier-El,* 204 F.3d 553, 559 (4th Cir. 2000)); *see also United States v. Singleton,* 107 F.3d 1091, 1101-02 (4th Cir. 1997).

¶ 26    Furthermore, while a defendant has a constitutional right to represent himself, he has no right to the appointment of advisory counsel in connection with the exercise of his right to self-representation. *People v. Romero,* 694 P.2d 1256, 1265 (Colo. 1985); *see Arguello,* 772 P.2d at 92 (stating that a defendant does not have a right to demand "hybrid" or mixed representation by

12

both the defendant and counsel).[1]  A trial court may, however, in its discretion, appoint advisory counsel for a pro se defendant. *Arguello*, 772 P.2d at 92.

## 2.    Analysis

¶ 27    Waller contends that, due to the circumstances of his case, the trial court violated his constitutional right to self-representation when it failed to appoint advisory counsel to assist him with proceeding pro se.  He argues that the court was constitutionally required to appoint advisory counsel to assist him with his representation due to his alleged limited education, a documented history of suffering from mental health problems, the fact that he had made mistakes when representing himself in a previous case, and his limited access to a law library.  We disagree.

---

[1] We note that the court in *United States v. Singleton*, 107 F.3d 1091, 1102 (4th Cir. 1997), observed that "irreconcilable differences" would likely arise between a lawyer and a defendant if a defendant were to have a constitutional right to have counsel appointed for any role he saw fit.  As an officer of the court, a lawyer has obligations, including the duty of disclosure, the duty to ask only appropriate questions, and "the duty not to suborn perjury, which have not been considered personally binding on the defendant." *Id.*  Furthermore, a lawyer's "attorney-client confidentiality could be seriously compromised by a system in which the defendant selectively employs his attorney while making his own defense." *Id.*

¶ 28    Waller was provided with competent counsel to represent him at trial, at no cost to himself.  At multiple times throughout the course of the proceedings, he was also given the opportunity to waive his right to counsel and to proceed pro se.  The court continually addressed the issue of whether Waller wished to proceed pro se or whether he wished for his counsel to continue representing him, and, indeed, the court granted several continuances to provide Waller with more time to make an informed decision about his representation.  Because there is no constitutional right to self-representation with the assistance of advisory counsel, the trial court was under no constitutional obligation to provide Waller any intermediate accommodation. *Romero*, 694 P.2d at 1265; *see Singleton*, 107 F.3d at 1102.  Thus, the trial court's refusal to appoint advisory counsel to assist Waller in proceeding pro se did not violate his federal and state constitutional rights to self-representation.

¶ 29    Waller's argument here — that, due to the circumstances of his case, the court violated his constitutional right to self-representation when it refused to appoint advisory counsel — misconstrues the law regarding a defendant's constitutional right to

14

self-representation and the law regarding a trial court's discretion to appoint advisory counsel.  As discussed above, there is no constitutional right to self-representation with the assistance of advisory counsel, *Romero*, 694 P.2d at 1265, and the record is clear that Waller continually conditioned his request to proceed pro se on the appointment of advisory counsel.  *See United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994) (The defendant's requests to proceed pro se were equivocal where they "were always accompanied by his insistence that the court appoint 'advisory' or 'standby' counsel to assist him on procedural matters.").  Instead, the appointment of advisory counsel remains a matter of trial court discretion.  *Arguello*, 772 P.2d at 92.  Thus, we turn to Waller's alternative contention and consider the specific circumstances in this case to decide whether the trial court abused its discretion by declining to appoint advisory counsel for Waller.

C.    The Trial Court's Alleged Abuse of Discretion

¶ 30    Waller contends that the trial court abused its discretion when it failed to conduct an adequate inquiry into the particular circumstances of his case that merited the appointment of advisory counsel to assist him with proceeding pro se.  Specifically, Waller

15

contends that the district court abused its discretion when: (1) Judge Madden allegedly initially denied his request for advisory counsel on February 28, 2013, based on negative experiences the court had in the past when appointing advisory counsel to assist defendants in other cases; (2) Judge Madden denied Waller's request for advisory counsel in his order of March 6, 2013, based on a general belief that appointing advisory counsel was never appropriate, without considering the particular circumstances in Waller's case; (3) Judge Madden denied Waller's renewed motion to proceed pro se with the assistance of advisory counsel on November 25, 2013, without conducting any inquiry into the information provided in Waller's renewed motion; and (4) Judge Egelhoff declined to exercise discretion when he deferred to Judge Madden's previous rulings declining to appoint Waller with advisory counsel.

¶ 31     We are not persuaded that either district court judge abused his discretion.

1.     Standard of Review and Applicable Law

¶ 32     We review the trial court's decision not to appoint Waller with advisory counsel for an abuse of discretion.[2]  *See Romero*, 694 P.2d at 1265.  A trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misconstrues or misapplies the law.  *People v. Fallis*, 2015 COA 75, ¶ 4.  In assessing whether a trial court abused its discretion, "we ask not if we would have reached a different result but, rather, whether the trial court's decision fell within a range of reasonable options."  *Id.*

¶ 33     The appointment of advisory counsel is "an intermediate measure designed to ensure a fair trial when the trial court determines that the defendant, because of mental or physical problems, is incapable of representing himself, or when it becomes apparent during trial that the defendant is simply unable to handle the task he has undertaken."  *Reliford v. People*, 195 Colo. 549,

---

[2] The People argue that Waller's contention that the court abused its discretion by declining to appoint advisory counsel to assist him with proceeding pro se at trial is not ripe for review or properly before this court because, ultimately, Waller did not represent himself at trial.  However, because Waller continually requested the trial court to appoint him advisory counsel, we conclude that this issue has been preserved for review and that we have jurisdiction to review the trial court's decision not to appoint advisory counsel for Waller.  *See People v. Cordova*, 293 P.3d 114, 120 (Colo. App. 2011) ("To preserve an issue for appeal, a defendant must alert the trial court to the particular issue.").

554, 579 P.2d 1145, 1148 (1978). While the appointment of advisory counsel "is generally a fair and commendable practice," *id.*, and "a salutary practice to be strongly encouraged," it is not constitutionally mandated, *Romero*, 694 P.2d at 1265. Instead, as previously discussed, the appointment of advisory counsel is a matter of trial court discretion. *Id.*; *see Reliford*, 195 Colo. at 554, 579 P.2d at 1148. Factors "which should inform the [court's] exercise of discretion" when deciding whether to appoint advisory counsel include "the factual and legal complexity of the issues, the defendant's familiarity with the criminal trial process, and his formal education and ability to effectively communicate with the court and jury." *Romero*, 694 P.2d at 1265.

### 2. Analysis

#### a. February 28 Hearing

¶ 34 Waller contends that Judge Madden abused his discretion when he denied Waller's request for advisory counsel on February 28, 2013, based on his general policy against the appointment of advisory counsel, without inquiring into the particular circumstances of Waller's case. The record belies this contention.

¶ 35     During the February 28 hearing, Judge Madden never denied Waller's request for the appointment of advisory counsel.  Instead, he stated: "I'm not going to say no today.  I'm going to say I don't think I'm likely to do it . . . but I'm going to go back and look again at the motion, I'm going to look at what I have in the file, review the case law."  Judge Madden did not make a decision on the matter until issuing his March 6 order.  Thus, we reject Waller's argument that, during the February 28 hearing, Judge Madden abused his discretion by denying Waller's request for advisory counsel based on a general policy against the appointment of advisory counsel.

¶ 36     We also note that during that hearing, Judge Madden heard argument from Waller's counsel that the court should appoint advisory counsel for Waller because he wished to represent himself, but counsel recognized that there were "layers of complexity where advisory counsel would be useful to him."  Only after hearing defense counsel's argument did Judge Madden indicate his disinclination to appoint advisory counsel unless "there was an actual reason for it."  Thus, Judge Madden did in fact consider the particular circumstances in Waller's case; his statements during this hearing were not based solely on a general policy against the

appointment of advisory counsel and certainly did not constitute an abuse of discretion. *Fallis*, ¶ 4.

b.    March 6 Order

¶ 37    We also disagree with Waller's contention that Judge Madden abused his discretion when he denied Waller's request for advisory counsel in his order of March 6, 2013, based on an alleged general belief that appointing advisory counsel was never appropriate, without considering the particular circumstances in Waller's case. Waller contends that the court abused its discretion because it did not consider the factors set forth in *Romero.* 694 P.2d at 1265 (Factors which should "inform the [court's] exercise of discretion" to appoint advisory counsel include "the factual and legal complexity of the issues, the defendant's familiarity with the criminal trial process, and his formal education and ability to effectively communicate with the court and jury."). Again, the record refutes Waller's argument.

¶ 38    Judge Madden's March 6 order states that Waller allegedly hit and kicked the victim, dragged her into his motel room, and kept her there against her will. The order states that Waller was identified by both the victim and an independent witness, and it

20

lists the charges filed against Waller. The court then specifically found that "[a]s such, the case is neither factually nor verbally [sic] complex."[3] Thus, contrary to Waller's argument, Judge Madden expressly made a finding that Waller's case was not complex. *Id.*

¶ 39    Judge Madden's March 6 order also stated that Waller "has prior history and experience with criminal proceedings, and is apparently familiar with legal concepts and procedures." Thus, we conclude that Judge Madden also made a finding as to Waller's familiarity with the criminal trial process. *Id.*

¶ 40    While the March 6 order does not contain any explicit findings as to Waller's formal education and ability to communicate with the court and jury, we note that defense counsel at this point in the proceedings had not alleged that Waller suffered from a limited education or mental health problems.[4] Additionally, before issuing his March 6 order, Judge Madden had stated that he wished to

---

[3] Although he used the word "verbally," viewed in context, it appears that Judge Madden instead meant to find that Waller's case was not "legally complex," because he made this specific finding immediately after summarizing the incident that led to Waller's charges and after explaining that Waller had been identified by both the victim and an independent witness.

[4] During the second day of Waller's trial, the trial court asked defendant how much school he had completed, to which Waller responded: "College."

21

review the record in Waller's case, which included the county court proceedings where Waller had represented himself before the county court judge, argued to the court, and asked the court many questions about the proceedings in his case. Judge Madden's review of the record in this case would have given him the opportunity to evaluate any potential issues related to Waller's formal education or ability to communicate with the court and jury.

¶ 41 In any event, Judge Madden's March 6 order also stated: "In light of all of these considerations, barring a change in circumstances, in the event the Defendant elects to represent himself, the Court will not appoint advisory counsel." Thus, the court did not foreclose the appointment of advisory counsel altogether. Instead, it left open the opportunity for Waller to show that there had been a change in circumstances that indicated a stronger need for advisory counsel.

¶ 42 Therefore, we conclude that Judge Madden did not abuse his discretion in his March 6 order by denying Waller's request to proceed pro se but only with the assistance of advisory counsel. *See Fallis*, ¶ 4.

c.   November 25 Denial of Waller's Renewed Motion

¶ 43   Waller next contends that Judge Madden abused his discretion by denying Waller's renewed motion to proceed pro se with the assistance of advisory counsel on November 25, 2013, because he did not conduct any further inquiry into Waller's renewed motion.  Waller contends that Judge Madden should have entered an order to ensure Waller had adequate law library access and should have inquired about information that Waller had limited education, had documented mental illness, and had made errors in the past when representing himself.  We disagree.

¶ 44   While Judge Madden did not inquire into the specific circumstances of Waller's renewed motion on November 25, he had held a hearing on Waller's written renewed motion for the appointment of advisory counsel just three days prior, during which he heard argument from Waller's counsel as to why the court should appoint advisory counsel in Waller's case.  Waller's counsel was given the opportunity to provide support for his allegations in

his written motion that Waller was a man of limited education[5] with a documented history of mental health problems, but counsel did not provide the court with any further information as to these issues.

¶ 45    Additionally, Judge Madden had already made findings in his March 6 order that Waller's case was neither factually nor legally complex and that Waller was familiar with the criminal trial process. *See Romero*, 694 P.2d at 1265. Furthermore, by the time Waller appeared at the November 25 hearing, the court had had many opportunities to evaluate any issues pertaining to Waller's education, competency, and abilities to communicate with the court and jury, but it noted none. Besides the unsupported allegations brought up for the first time in defense counsel's written motion on November 1 (discussed further below), there were no new circumstances that required the court to reconsider its March 6 order. Therefore, we conclude that Judge Madden did not abuse his discretion when he denied Waller's renewed request for the

---

[5] We again note that during the second day of Waller's trial, the trial court asked defendant how much school he had completed, to which Waller responded: "College."

24

appointment of advisory counsel on November 25. *See id.*; *see also Fallis*, ¶ 4.

¶ 46 We disagree that Judge Madden abused his discretion by not inquiring into the information provided to the court that Waller had committed several mistakes when he represented himself in a prior case. The "lack of 'technical legal knowledge' should not be considered when a court rules on a motion to proceed pro se." *Johnson*, ¶ 22. Additionally, simply because Waller may have made mistakes in the past when representing himself did not substantively distinguish him from any other defendant electing to proceed pro se. There are risks encompassed with the decision to proceed pro se, and while "a pro se defense is usually a bad one," *id.* at ¶ 19, it is a constitutional right provided to all defendants regardless of mistakes they may have made in the past. *See Arguello*, 772 P.2d at 92.

¶ 47 We also reject Waller's argument that Judge Madden abused his discretion when he did not enter an order to ensure Waller had adequate law library access. When a defendant is represented by counsel, counsel is a resource who serves as the "functional equivalent of a law library or alternative sources of legal

knowledge." *People v. Vialpando*, 954 P.2d 617, 620 (Colo. App. 1997); *see also United States v. Taylor*, 183 F.3d 1199, 1204 (10th Cir. 1999) ("It is well established that providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library."). Here, Waller was represented by counsel throughout the district court proceedings, and his counsel could have provided him with any legal resources or information he requested regarding representation issues or other issues in the case. Furthermore, Judge Madden had denied Waller's requests for additional library time while he was represented by counsel but stated that he would revisit the issue if Waller chose to proceed pro se.

¶ 48 Thus, Judge Madden did not abuse his discretion when he denied Waller's renewed request to proceed pro se with the appointment of advisory counsel on November 25. *See Fallis*, ¶ 4.

### d. Judge Egelhoff's Orders

¶ 49 Waller also contends that Judge Egelhoff abused his discretion by essentially declining to exercise discretion when he deferred entirely to Judge Madden's previous rulings declining to appoint advisory counsel. *See People v. Darlington*, 105 P.3d 230, 232

26

(Colo. 2005) ("[F]ailure to exercise discretion is itself an abuse of discretion."). We are not persuaded.

¶ 50 The record shows that when Judge Egelhoff deferred to Judge Madden's previous rulings declining to appoint advisory counsel, this was in fact an exercise of his discretion, not a failure to exercise discretion. When defense counsel renewed the issue of Waller wanting to proceed pro se with the assistance of advisory counsel, Judge Egelhoff stated that he had reviewed the record; knew that Judge Madden had repeatedly addressed the issue; and knew that Judge Madden had held a hearing, made findings, and issued an order with respect to the issue. Thus, the record reflects that Judge Egelhoff was familiar with the circumstances in the case and made an informed, discretionary decision to defer to Judge Madden's previous rulings on the matter. Additionally, Waller did not provide Judge Egelhoff with any additional reasons or new circumstances as to why the court should appoint him advisory counsel beyond those that Judge Madden had already addressed. Thus, it was not necessary for Judge Egelhoff to allow Waller to re-litigate his request for the court to appoint advisory counsel simply because a new judge was handling the case. Instead, it was within

27

Judge Egelhoff's discretion to defer to Judge Madden's decisions declining to appoint Waller advisory counsel, and doing so was not an abuse of discretion. *See Fallis*, ¶ 4.

### III. Jury Nullification and the Reasonable Doubt Jury Instruction

¶ 51 Waller also contends that his constitutional right to a fair trial by an impartial jury was violated by language in the court's reasonable doubt jury instruction that allegedly abolished the jury's power to nullify. He contends that the mandatory wording of the reasonable doubt jury instruction, which stated that the jury "will" find the defendant guilty if the jury found that the prosecution had proven every element beyond a reasonable doubt, was tantamount to a directed verdict for the prosecution. We disagree.

### A. Facts

¶ 52 The general reasonable doubt jury instruction given to the jury stated, in pertinent part, as follows:

> If you find from the evidence that each and every element has been proven beyond a reasonable doubt, you *will* find the Defendant Guilty. If you find from the evidence that the prosecution has failed to prove any one or more of the elements beyond a reasonable doubt you *will* find the Defendant Not Guilty.

(Emphasis added.)

¶ 53 In contrast, the elemental instruction for the third degree assault charge stated, in pertinent part, as follows: "After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements beyond a reasonable doubt, you *should* find the Defendant Not Guilty of Third Degree Assault." (Emphasis added.)

¶ 54 Waller objected to the general reasonable doubt instruction on the ground that it included the phrase "you will find the Defendant Guilty" instead of "you should find the Defendant Guilty." He also tendered a reasonable doubt instruction that used the word "should" rather than "will." The court declined to give Waller's tendered instruction.

## B. Standard of Review

¶ 55 We review de novo whether jury instructions as a whole accurately informed the jury of the law.[6] *People v. Ridgeway*, 2013 COA 17, ¶ 12.

---

[6] We reject the People's argument that Waller did not preserve his contention that the use of the word "will" rather than "should" in the general reasonable doubt jury instruction violated his constitutional rights. Prior to closing argument, when the parties

¶ 56    When determining whether a challenged reasonable doubt standard instruction satisfies the Due Process Clause, a reviewing court should ask "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates' the Constitution." *People v. Munoz*, 240 P.3d 311, 316 (Colo. App. 2009) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)).

### C.    Background Law on Jury Nullification

¶ 57    Nullification is a juror's "knowing and deliberate rejection of the evidence or refusal to apply the law because the result dictated by law is contrary to the juror's sense of justice, morality, or fairness." *State v. Nicholas*, 341 P.3d 1013, 1015 (Wash. Ct. App. 2014).  Jury nullification occurs in a trial when a jury acquits a

---

were modifying the jury instructions that would be provided to the jury, Waller's counsel orally requested the court to modify the word "will" to "should" in the general reasonable doubt jury instruction. Additionally, the jury instructions that defense counsel tendered to the trial court included a request to change the word "will" to "should" in the general reasonable doubt jury instruction, and they also included a citation to *People v. Wilson*, 972 P.2d 701, 706 (Colo. App. 1998), with the following case explanation quoting *Wilson* in part: "(recognizing 'jury's de facto power of nullification and the jurors' duty to follow the court's instructions,' and thus, holding that court should not explicitly instruct on nullification)." We conclude that Waller sufficiently preserved his contention that the general reasonable doubt jury instruction violated his constitutional rights.  *Cordova*, 293 P.3d at 120.

defendant even though the members of the jury believe the defendant is guilty of the charges. *Id.*

¶ 58 The doctrine of jury nullification traces its roots to the early American colonial days, and it can be explained by "the almost total absence of an established legal profession; . . . the pervasive influence of natural rights philosophy; and . . . the shared experience of living under — and then rebelling against — a tyrannical form of government." *State v. Hatori*, 990 P.2d 115, 120 (Haw. Ct. App. 1999) (quoting *People v. Douglas*, 680 N.Y.S.2d 145, 152 n.17 (N.Y. Sup. Ct. 1998)). It is also said to be rooted in the Sixth Amendment's guarantee to a jury trial. *Id.* The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury," U.S. Const. amend. VI, and this right includes the right to have a jury, rather than a judge, reach "the requisite finding of 'guilty.'" *Sullivan*, 508 U.S. at 277. Thus, although a judge may direct a verdict in favor of a defendant, a judge may not direct a verdict for the State. *Id.*; *see also United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572 (1977) (stating that because jurors are the primary finders of fact, a trial judge is prohibited from

entering a judgment of conviction or directing the jury to come forward with such a verdict).

¶ 59 Colorado courts "have said little about the issue of jury nullification" and have even stated that "the issue of nullification is best avoided." *People v. Wilson*, 972 P.2d 701, 705-06 (Colo. App. 1998). However, in *Wilson*, a division of this court recognized that because there is a tension between a jury's power to nullify and the jury's duty to follow the court's instructions, a trial court has discretion to preclude counsel from arguing jury nullification. *Id.* at 706. Furthermore, a defendant is not entitled to a jury instruction informing jurors that they have the inherent power to nullify a verdict of guilt. *See id.* While a jury does have the power to nullify, there is no right to jury nullification. *Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999).

### D. *State v. Smith-Parker*

¶ 60 Waller's contention here is based, in large part, on the Kansas Supreme Court's opinion in *State v. Smith-Parker*, 340 P.3d 485 (Kan. 2014). In that case, the defendant argued that a jury instruction on alternative first degree murder theories contained a misstatement of law with respect to reasonable doubt. *Id.* at 506.

The instruction stated: "If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty." *Id.* The defendant argued that the instruction should have been identical to the general reasonable doubt instruction that was given, which stated: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find the defendant guilty." *Id.*

¶ 61 The Kansas Supreme Court discussed a previous opinion *State v. Lovelace*, 607 P.2d 49, 55 (Kan. 1980), in which the court had held that an instruction which told jurors that they "must" find a defendant guilty if they had no reasonable doubt about the elements of the crime was constitutional. The court in *Lovelace* had rejected the argument that the term "must" commanded the jury to find the defendant guilty, and it noted that "should" and "must" could be used interchangeably in criminal jury instructions. *Id.*; *see also Smith-Parker*, 340 P.3d at 506-07.

¶ 62 Nonetheless, the court in *Smith-Parker* overruled *Lovelace*, concluding that the district court's instruction in *Smith-Parker* "went too far" and "essentially forbade the jury from exercising its

33

power of nullification." 340 P.3d at 507. The court stated that "the wording of the instruction at issue in *Lovelace* — 'must' — and the wording at issue here — 'will' — fly too close to the sun of directing a verdict for the State. A judge cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." *Id.*

### E. *People v. Munoz*

¶ 63    In contrast, the People rely, in large part, on the opinion by a division of this court in *Munoz*, 240 P.3d at 315-19.

¶ 64    In *Munoz*, the division addressed an argument by the defendant that the word "should" in a reasonable doubt jury instruction granted the jury too much discretion. *Id.* at 316-17. The defendant in *Munoz* argued that the trial court's use of the word "should" in the reasonable doubt jury instruction for each offense impermissibly lowered the prosecution's burden of proof because the word "should" is merely a "permissive request rather than a mandatory command." *Id.* at 317. The defendant contended that the word "should" in the reasonable doubt instruction "left the issue of whether the prosecution proved defendant's guilt beyond a reasonable doubt to the jury's discretion rather than informing the

34

jury that it was obligated to return a not guilty verdict if the prosecution failed to present sufficient proof." *Id.*

¶ 65 The division first looked to the dictionary definition of "should," which states that the term is used "to express duty, obligation, propriety, or expediency." *Id.* (quoting *Webster's Third New International Dictionary* 2104 (2002)). The division reasoned that although courts have interpreted the word in various contexts and have drawn conflicting conclusions, "the weight of authority appears to favor interpreting 'should' in an imperative, obligatory sense." *Id.* The division found that courts in other jurisdictions had held that the word "should" in a reasonable doubt jury instruction "conveys a sense of duty and obligation and could not be misunderstood by a jury." *Id.* (quoting *State v. McCloud*, 891 P.2d 324, 335 (Kan. 1995)); *see also Tyson v. State*, 457 S.E.2d 690, 691-92 (Ga. Ct. App. 1995). Ultimately, the division in *Munoz* concluded that the common meaning of "should" "conveys an obligatory command and not a permissive request," and thus it held that the challenged instructions using the word "should" adequately informed the jury of its "obligation to adhere to the reasonable doubt standard in deciding defendant's guilt." 240 P.3d at 317.

## F. Applicable Out-of-State Authority

¶ 66 Because defendant's contention here raises an issue of first impression in Colorado, we look to cases in other jurisdictions where courts have considered and rejected instructional challenges and nullification arguments similar to Waller's contentions.

¶ 67 In *Farina v. United States*, 622 A.2d 50, 61 (D.C. 1993), the defendant argued that the trial court's instruction stating that a jury "must" find the defendant guilty if it finds that the government proved every element of the offense beyond a reasonable doubt constituted a directed verdict of guilt. The court rejected this contention and concluded that the instruction was proper

> if given in the context of other instructions which inform the jury about the presumption of innocence, the government's burden of proving each element of the offense beyond a reasonable doubt, and other matters such as the fact that the jury must consider all the instructions given, as a whole.

*Id.* The court in *Farina* reasoned that a jury should not be informed of its power to ignore the law, and it held that the trial court's instruction using the word "must" was not akin to a directed verdict for the prosecution. *Id.* at 60-61; *see also State v. Ragland*, 519 A.2d 1361, 1365-73 (N.J. 1986) (same).

36

¶ 68    Similarly, in *Nicholas*, the Washington Court of Appeals addressed whether a "duty to convict" jury instruction misled the jury about its power to acquit.  341 P.3d at 1014-15.  The instruction in that case stated: "If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then *it will be your duty* to return a verdict of guilty."  *Id.* (emphasis added).  The defendant argued that the word "duty" in the jury instruction "unconstitutionally impinges upon a jury's inherent power to acquit."  *Id.* at 1015.

¶ 69    The Washington Court of Appeals stated that judges declare the law, while jurors must swear to faithfully apply the law.  *Id.* at 1017.  The court held that jurors swear an oath to faithfully apply the law, and the "use of the word 'duty' is consistent with the oath requirement that the jury give a true verdict, and that it does so according to the law and evidence."  *Id.*  Concluding that the challenged jury instruction did not violate the defendant's constitutional rights by misleading the jury about its power to acquit, the court stated that "courts recognize that jury nullification occurs in practice, but we will not promote it nor educate jurors about nullification."  *Id.* at 1015, 1018-19; *see also Hatori*, 990 P.2d

37

at 118-22 (discussing nullification and upholding a similar "duty to follow the law" instruction).

## G.     Analysis

¶ 70     Waller contends that we should follow the holding in *Smith-Parker* and conclude that his constitutional right to a fair trial by an impartial jury was violated by the trial court's use of the word "will" in the reasonable doubt jury instruction, thus abolishing the jury's power to nullify.  We are not persuaded.

¶ 71     We begin our analysis by noting that Waller does not challenge the trial court's elemental instruction that stated that the jury "*should* find the Defendant Guilty of Third Degree Assault" if the jury decided that the prosecution had proven each of the elements of third degree assault beyond a reasonable doubt.  (Emphasis added.)  Indeed, he contends that the trial court erred by not using the word "should," rather than "will," in all jury instructions discussing the concept of reasonable doubt because use of the term "will" allegedly forbade the jury from exercising its nullification power and was too close to directing a verdict for the State.[7]

---

[7] We recognize that COLJI-Crim. E:03 (2015), the model general jury instruction on reasonable doubt, uses the word "should," and

¶ 72     We reject this argument because, as previously discussed, a

division of this court has held that the word "should," when used in

a reasonable doubt jury instruction, conveys a sense of duty and

obligation, and not merely an expanded form of discretion.  *See*

*Munoz*, 240 P.3d at 317.  Other jurisdictions have agreed with this

holding.  *See McCloud*, 891 P.2d at 335; *see also Tyson*, 457 S.E.2d

at 691-92.  Thus, use of the term "should" does not grant the jury

as much, or arguably any, discretion as Waller contends and is no

less obligatory than the use of the word "will" in the reasonable

doubt instruction at issue here.  Accordingly, we disagree with

Waller's argument that use of the word "should" in the elemental

instruction allowed the jury to use its power to nullify, whereas use

of the word "will" in the general reasonable doubt instruction

somehow abolished the jury's power to nullify.

¶ 73     More fundamentally, we simply disagree with the Kansas

court's holding in *Smith-Parker* and, under the circumstances here,

---

the better practice may be for trial courts to do so.  However,
because Waller only makes a constitutional argument on appeal, for
all of the reasons set forth in this opinion, the language in the
model instruction does not change our conclusion that the trial
court's instruction here did not violate Waller's constitutional
rights.

decline to follow that decision. Rather, we are more persuaded by cases from other jurisdictions where courts have rejected challenges to similarly worded mandatory language in reasonable doubt jury instructions based on nullification arguments.[8]

¶ 74 Although the court in *Smith-Parker* held that use of the terms "will" and "must" flew "too close to the sun of directing a verdict for the State," the court did not provide any analysis for its conclusion. 340 P.3d at 507. By contrast, we are more persuaded by the reasoning of cases such as *Farina,* where the court concluded otherwise, finding that the use of the word "must" in a reasonable doubt jury instruction did not constitute a directed verdict of guilt. 622 A.2d at 61; *see also Ragland,* 519 A.2d at 1365-73.

¶ 75 Indeed, we find it instructive that some courts have held that even a jury instruction stating that jurors have a "duty to return a verdict of guilty" is constitutional and does not improperly abolish a jury's inherent nullification power. *See Hatori,* 990 P.2d at 118-22; *Nicholas,* 341 P.3d at 1014-19. In our view, an instruction that

---

[8] Indeed, based on our research, we agree with the People that *State v. Smith-Parker,* 340 P.3d 485, 507 (Kan. 2014) is a minority — perhaps sole — view on this issue. We have not found, nor has Waller cited, a case from any other jurisdiction agreeing with the holding and reasoning in *Smith-Parker.*

jurors "will find the Defendant Guilty" is even less obligatory and objectionable than an instruction which tells jurors that they have a "duty to return a verdict of guilty."

¶ 76 Additionally, we agree with the People that courts need not promote nullification, *Nicholas*, 341 P.3d at 1015, and we reiterate that while jurors have the power to nullify, there is no right to nullification, *Crease*, 189 F.3d at 1194; *see also Wilson*, 972 P.2d at 706 (recognizing that most courts have held that trial courts should not instruct the jury that it may nullify a verdict of guilt).

¶ 77 For these reasons, we decline to adopt the holding from *Smith-Parker*, and we thus reject Waller's contention that the trial court's general reasonable doubt instruction — instructing the jury that it "will find the Defendant Guilty" if it found that the prosecution proved all elements of an offense beyond a reasonable doubt — abolished the jury's power to nullify and essentially constituted a directed verdict for the State.

## IV. Conclusion

¶ 78 The judgment is affirmed.

JUDGE STERNBERG and JUDGE PLANK concur.

41