22CA1732 Peo v Rodriguez 03-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1732
El Paso County District Court No. 17CR5166
Honorable David Shakes, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Pedro Rodriguez,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUSTICE MARTINEZ*
Freyre and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 20, 2025

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, River B. Sedaka, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Pedro Rodriguez, appeals his conviction for possession with intent to distribute a controlled substance.  We affirm the judgment.

I.     Background

¶ 2     Police officers stopped a car for failing to use its turn signal on I-25 northbound in Colorado Springs.  Rashaud Williams was the driver of the stopped car, while Rodriguez was in the front passenger seat.

¶ 3     The officers asked Williams and Rodriguez for their licenses and the car's registration and insurance.  Williams and Rodriguez provided their licenses but had trouble finding the other documents, so they began reaching around the car to search.  While searching, Rodriguez opened the glove box.  Inside the glove box, the officers noticed a large amount of cash spilling out.  Rodriguez quickly closed the glove box and, according to the officers, appeared nervous.

¶ 4     At this point, the officers ordered Williams and Rodriguez out of the car.  But instead of getting out of the car, Williams and Rodriguez reached for the gearshift.  Fearing they were trying to flee, one officer punched Williams, and another officer sprayed

1

pepper spray into the car. During this commotion, Rodriguez continued to reach around the car, including under his seat. Believing Rodriguez was reaching under his seat for a gun, one officer warned to watch for a gun, causing the other officers to yell "gun" and raise their firearms. (Ultimately, however, no gun was found in the car or on either occupant.)

¶ 5 Then Rodriguez jumped out of the car and started running away into the field on the side of the highway. As Rodriguez ran, an officer saw him throw aside a clear plastic baggie containing white powder. Police chased after Rodriguez, tased him, and took him into custody.

¶ 6 After Rodriguez was arrested, police retrieved the baggie from the field. Later testing showed the baggie contained 27.63 grams, or about an ounce, of cocaine. Police also discovered $21,540 in cash and five cellphones in the car.

¶ 7 The prosecution charged Rodriguez with possession with intent to distribute a controlled substance and obstructing a police officer. A jury convicted Rodriguez of both charges. But another division of this court reversed the drug conviction because the prosecution failed to establish a sufficient chain of custody for the

2

cocaine at trial. *People v. Rodriguez*, 2022 COA 11, ¶¶ 2-35. The case was remanded for a new trial on the drug charge.

¶ 8 At the new trial, one of the witnesses for the prosecution was a narcotics detective who investigated the case, Detective Eric Coddington. Coddington testified as an expert that the amount of cocaine, cash, and cellphones showed possession with the intent to distribute. The defense argued that Rodriguez got scared and ran and that the drugs were not his. In addition, the defense challenged the adequacy of the investigation of the incident and claimed there was no evidence to show Rodriguez had any plans to sell any drugs.

¶ 9 The jury found Rodriguez guilty of possession with intent to distribute a schedule II controlled substance.

## II. Expert Witness Testimony

¶ 10 Rodriguez contends that the trial court erred in allowing the prosecution's expert to testify to the ultimate issue of whether the evidence showed possession with an intent to distribute because such testimony usurped the function of the jury. We disagree because any error was not plain.

### A. Additional Background

¶ 11     At trial, Detective Coddington testified as an expert in narcotics investigation and surveillance. After Coddington testified about each of the pieces of evidence recovered in this case, including the cash, cocaine, and cellphones, the prosecutor asked: "And based on your experience in this area and as an expert, was this amount of cocaine and the way it was packaged and the money and the cell phones, *did that show possession with an intent to distribute* or sell?" (Emphasis added.) Coddington answered, "Yes."

### B. Standard of Review and Applicable Law

¶ 12     We review a trial court's decision to admit testimony for an abuse of discretion. An abuse of discretion occurs when a trial court's ruling is manifestly arbitrary, unreasonable, or unfair or if it misapplies the law. *People v. Payne*, 2019 COA 167, ¶ 5.

¶ 13     Because Rodriguez did not object at trial, we review for plain error. *See Hagos v. People*, 2012 CO 63, ¶ 14. Plain error is "obvious and substantial." *Id.* We reverse only if the error "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Id.* (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).

¶ 14    CRE 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  But "while expert testimony is not objectionable merely because it embraces an ultimate issue to be decided by the jury, an expert witness cannot 'tell the jury what result to reach or form conclusions for the jurors that they are competent to reach on their own.'"  *People In Interest of J.R.*, 2021 COA 81, ¶ 21 (citations omitted).  Doing so would usurp the function of the jury.

¶ 15    To determine whether expert testimony usurped the function of the jury, the court should consider the factors set forth in *People v. Rector*, 248 P.3d 1196, 1203 (Colo. 2011):

> whether (1) the testimony was clarified on cross-examination; (2) the expert's testimony expressed an opinion of the applicable law or legal standards and thereby usurped the function of the court; (3) the jury was properly instructed on the law and that it could accept or reject the expert's opinion; and (4) the expert opined that the defendant had committed the crime or that there was a particular likelihood that the defendant did so.

*People v. Baker*, 2021 CO 29, ¶ 32 (citing *Rector*, 248 P.3d at 1203).

## C. Analysis

¶ 16    Our analysis of the admissibility of Detective Coddington's testimony focuses on the fourth *Rector* factor because the first few *Rector* factors weigh in favor of no error. Specifically, Detective Coddington's testimony was clarified on cross-examination, which addressed the detective's limited personal knowledge of the traffic stop and arrest, the lack of some other indicators of drug distribution, and the detective's lack of recall regarding other details. *See Lawrence v. People*, 2021 CO 28, ¶ 51. Also, Detective Coddington never expressed an opinion of the law or applicable legal standards, although he did offer examples of evidence that indicated possession with the intent to distribute. *See id.* at ¶ 52 (Expert testimony that "simply provided a general overview of the applicable law and offered examples to help explain the concepts" was admissible.). Finally, the court properly instructed the jury that they were not bound by the testimony of any expert witness. *See id.* at ¶ 53.

¶ 17    However, Detective Coddington's testimony comes close to stating "that the defendant had committed the crime." *Baker*, ¶ 32. Relevant to the fourth *Rector* factor the prosecutor asked, "[W]as

6

this amount of cocaine and the way it was packaged and the money and the cell phones, did that show possession with an intent to distribute or sell?" This question followed a series of questions and answers that established that the detective was familiar with the contents of the plastic baggie found in the field and the money and cell phones found in the car. Thus, the question was based on the specific facts of this case rather than a hypothetical or general situation. *C.f. Lawrence*, ¶ 54 (expert did not opine that defendant committed any crime when he provided only "hypothetical examples" to explain a legal concept). And therefore, the context of the detective's affirmative response oriented his testimony to an opinion on whether the evidence in *this* case could show *this* defendant committed the alleged crime.

¶ 18    The prosecutor's question also addressed the crime's elements, specifically possession and intent. The inclusion of both of those elements distinguishes this case from *People v. Atencio*, 140 P.3d 73, 76 (Colo. App. 2005), where the court found that an expert's testimony that the amount of the controlled substance in that case was "consistent with distribution" did not invade the province of the jury because the expert never said the defendant possessed the

7

requisite intent. *See also Lawrence*, ¶ 54 (expert testimony concluding only one element of the charged crimes was met was admissible).

¶ 19 Moreover, asking whether the evidence "show[ed]" intent to distribute more directly compels a legal conclusion than asking whether the evidence was "consistent with" intent to distribute. *Atencio*, 140 P.3d at 76. By framing the question this way, the jury could have understood the prosecutor to have been, in effect, asking Coddington to opine whether Rodriguez was guilty of the charged crime. Such a question impermissibly asks the expert to "appl[y] the law to the facts in such a way as to suggest that the expert ha[s] determined that the defendant [i]s guilty." *Baker*, ¶ 33; *see People v. Penn*, 2016 CO 32, ¶ 31 ("[A] witness cannot testify that he believes that the defendant committed the crime at issue.").

¶ 20 However, the prosecutor's question did not refer to Rodriguez directly. The extent to which the question referred to Rodriguez was only indirect; the question's connection to Rodriguez was established through other testimony that he threw away the baggie and had been seated near where the cell phones and money were found. The indirect nature of the reference to Rodriguez is a

consideration, together with the first three *Rector* factors, weighing in favor of finding no error.

¶ 21    But even if we assume Detective Coddington's testimony should not have been admitted, we conclude that any error was not plain because it was not obvious or substantial. *See Hagos*, ¶ 14. The error was not obvious because, as our analysis demonstrates, determining whether this testimony was admissible involves carefully weighing several *Rector* factors, one of which does not weigh entirely in the opposite direction as the other three factors. Also, understanding that factor, including the reference to Rodriguez specifically, requires thoughtfully considering the specific wording of the question that resulted in the answer, "yes," as well as the preceding line of questioning. We do not believe the error is "'so clear-cut, so obvious,' a trial judge should be able to avoid it without benefit of objection." *People v. Crabtree*, 2024 CO 40M, ¶ 42 (citation omitted). Further, defense counsel's failure to object can be considered to demonstrate the error was not obvious. *See People v. Walters*, 148 P.3d 331, 334-35 (Colo. App. 2006) ("We may consider a lack of contemporaneous objection by the defendant as demonstrating 'the defense counsel's belief that the live argument,

despite its appearance in a cold record, was not overly damaging.'" (quoting *Domingo-Gomez v. People*, 125 P.3d 1043, 1054 (Colo. 2005))).

¶ 22    Moreover, the error also did not affect "the substantial rights of the accused." *Crabtree*, ¶ 43 (citation omitted).  Ample evidence supported the jury's finding that Rodriguez possessed the cocaine with the intent to distribute: the almost one-ounce baggie of cocaine that Rodriguez tossed aside while running; the $21,540 in cash; and the five cellphones that were recovered from the car.  In addition, before Detective Coddington made the challenged statement, he testified that the amount of cocaine and the way it was packaged, as well as the large amount of cash and cellphones, were indicators of drug trafficking.  Thus, there was substantial other evidence upon which the jury could have found Rodriguez guilty.  *See Lawrence*, ¶ 56 (Any error in admitting expert testimony on the ultimate issue was harmless when "[s]ubstantial, if not overwhelming, evidence supported the jury's findings.").

¶ 23    Finally, the focus of Detective Coddington's direct examination was whether the evidence showed the cocaine was intended for distribution rather than personal use.  But the case did not hinge

on this issue. Intent to distribute was only one element of the crime and was not the focus of the defense strategy. While the defense could be considered a general denial and included the argument that police inadequately investigated the case, it was a denial of the possession of any cocaine. The denial of the requisite intent to distribute was a consequence of the defense's denial of possession rather than a distinct issue in the trial.

¶ 24    For all these reasons, even if admission of Detective Coddington's testimony was erroneous, we conclude that any error was harmless.

### III.    Prosecutorial Misconduct

¶ 25    Rodriguez also contends that the prosecutor committed misconduct during closing argument by making several improper statements. We are not persuaded.

### A.    Standard of Review and Applicable Law

¶ 26    We analyze claims of prosecutorial misconduct in two steps. "First, we must determine whether the prosecutor's challenged conduct was improper based on the totality of the circumstances, and, second, we must determine whether such conduct warrants reversal according to the proper standard of review." *People v.*

*Nardine*, 2016 COA 85, ¶ 36. When, as here, the defendant does not object to the challenged conduct at trial, "we will only reverse a conviction if the conduct was improper and rises to the level of plain error." *Id.* at ¶ 37.

¶ 27 As advocates, prosecutors have "wide latitude in the language and presentation style used to obtain justice." *People v. Herold,* 2024 COA 53, ¶ 68 (quoting *Domingo-Gomez,* 125 P.3d at 1048). A prosecutor may "refer to the strength and significance of the evidence, conflicting evidence, and reasonable inferences that may be drawn from the evidence" during closing argument. *Id.* (quoting *Walters,* 148 P.3d at 334.

¶ 28 But appropriate prosecutorial advocacy has limits. Prosecutors may not refer to facts not in evidence, make statements reflecting their own knowledge, intentionally misstate the evidence, or express their personal belief in the defendant's guilt. *See Walters,* 148 P.3d at 334; *Domingo-Gomez,* 125 P.3d at 1049. "Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury." *Herold,* ¶ 70 (quoting *People v. Geisendorfer,* 991 P.2d 308, 312 (Colo. App. 1999)).

## B.    Statements About Drug Dealers

¶ 29    During closing argument, the prosecutor made several statements that only drug dealers would carry the amounts of cash and cocaine recovered in this case:

> No user is going to carry around a full ounce of cocaine.
>
> . . . .
>
> And, ladies and gentlemen, you can consider all that money in the glove box, $21,500.  Now, who would carry around that much money in a glove box?  Somebody who is making drug deals, that's who would carry around that much money.  Nobody other than drug dealers are going to be paying 21,000 — or going to be carrying that amount of money around. Nobody except for people engaging in drug dealing or [sic] going to be accepting that amount of money in cash.
>
> . . . .
>
> As I said in my first close, nobody except for drug dealers carries around $21,000 in their glove box.

¶ 30    Rodriguez contends that these statements asserted facts not in evidence and injected the prosecutor's own purported expertise into the case.  We disagree.

¶ 31    The prosecutor's comments that "nobody except for drug dealers" would possess the amounts of cash and cocaine found in

13

this case did not assert facts outside the evidence or imply the prosecutor had specialized knowledge; rather, these comments properly referred to Detective Coddington's expert testimony that these amounts tended to indicate an intent to distribute rather than personal use. *See Domingo-Gomez*, 125 P.3d at 1048 ("Final argument may properly include the facts in evidence and any reasonable inferences drawn therefrom.").

¶ 32    Although the expert did not testify that *literally* "nobody" except distributors would possess cash and cocaine in these amounts, in the context of closing argument, it would be fair to assume the prosecutor did not mean the phrase in a literal sense. The prosecutor was using a "rhetorical device[]" to make the point that it would be unusual for a mere user to carry around these amounts of cash and cocaine, and therefore, the evidence showed an intent to distribute. *People v. Allee*, 77 P.3d 831, 837 (Colo. App. 2003). "[A] prosecutor is permitted to use 'oratorical embellishment' and 'metaphoric nuance.'" *People v. Vialpando*, 2022 CO 28, ¶ 23 (citation omitted).

¶ 33    Even if the prosecutor's statements exaggerated the expert's testimony, these statements were not likely to "mislead the jury."

*Domingo-Gomez*, 125 P.3d at 1049 (citation omitted). It requires only common sense to realize that there could be other possible reasons why someone may carry these quantities of cash and drugs. Indeed, the defense pointed out that a user may buy cocaine in bulk to get it cheaper during Detective Coddington's cross-examination. And the trial court properly instructed the jury that statements of attorneys are not evidence. Thus, the statements were permissible argument.

### C.   Statements About the Value of the Cocaine

¶ 34   During closing argument, the prosecutor asserted that the cocaine was "worth about 1,500 to $2,000, I believe is the figure you were given." But Detective Coddington, who provided the only testimony about the value of the cocaine, had testified that it was worth $1,200 to 1,500. Rodriguez contends the prosecutor misstated the evidence by inflating the cash value of the cocaine. We disagree.

¶ 35   Even though the prosecutor misstated the value of the cocaine, "nothing in the record suggests that the prosecutor *intentionally* misstated the facts." *Herold*, ¶ 84; *Domingo-Gomez*, 125 P.3d at 1049 ("The prosecutor should not intentionally misstate

15

the evidence . . . ." (quoting ABA Standards for Crim. Just., Prosecution Function & Def. Function § 3-5.8 (3d ed. 1993)). If anything, the record shows that the prosecutor was unsure of the number because she qualified her statement with "I believe." Accordingly, we do not think the prosecutor intentionally misstated the evidence.

¶ 36 The misstatement was also unlikely to prejudice the jury because the difference in values was not significant, and the precise cash value of the cocaine was not relevant to any elements of the charge. Moreover, Detective Coddington had testified to the correct number just before closing argument. And again, the trial court properly instructed the jury that statements of attorneys are not evidence. Thus, "there is no substantial likelihood that the prosecution's misstatements during . . . closing contributed to defendant's conviction." *People v. Arzabala*, 2012 COA 99, ¶ 72 (When "the evidence presented at trial made [the facts] abundantly clear," the prosecutor's misstatement of the facts was not plain error.).

### D. Statements About Defendant's Guilt

¶ 37    The prosecutor asserted that Rodriguez was guilty several times during closing argument. For example, the prosecutor said, "[T]he defendant in this case is guilty of Possession with Intent to Distribute a Controlled Substance: cocaine," and "He is guilty beyond a reasonable doubt." Rodriguez contends that these statements were improper because the prosecutor expressed a personal belief in his guilt. The prosecutor also said, "The Prosecution has given you all the evidence that it can," during closing, and "[W]e've given you all the information that we can," during rebuttal closing. Rodriguez contends that these statements were improper because the prosecutor implied personal knowledge of additional evidence of his guilt. Together, Rodriguez argues, these statements impermissibly encouraged jurors to rely on the prosecutor's judgment rather than the evidence.

¶ 38    We disagree with Rodriguez's characterization of the prosecutor's argument. The prosecutor's statements that Rodriguez was guilty were "largely tied to [her] arguments about the evidence." *Vialpando*, ¶ 42. For example, the prosecutor explicitly referred to the evidence in one of her challenged statements: "*All of this*

17

*evidence* tells you, ladies and gentlemen, the defendant is in fact guilty . . . ." (Emphasis added.) And the prosecutor did not precede her statement with a phrase like "I believe" or otherwise indicate her statement was a personal opinion imbued with the power of the State. *People v. Samson*, 2012 COA 167, ¶ 38. When viewed in the context of the entire closing argument, the prosecution's assertions that Rodriguez was guilty amounted to a "reasonable inference" that the evidence established his guilt. *People v. Villa*, 240 P.3d 343, 358 (Colo. App. 2009).

¶ 39    We also disagree that the prosecutor implied personal knowledge of evidence unknown to the jury by saying, "[W]e've given you all the information that we can." These statements were clearly intended to rebut the defense's argument that the evidence was insufficient due to a "flawed investigation" that was "filled with holes."

¶ 40    Regardless, even assuming that these were improper personal opinions, the prosecutor's statements were a "small part of [her] argument," which was otherwise a fair summary of the evidence. *Vialpando*, ¶ 42. The trial court also instructed the jury on the presumption of innocence, "which helped to ameliorate any

18

prejudice associated with the prosecutor's comments." *Id.* For these reasons, the prosecutor's statements regarding Rodriguez's guilt did not constitute misconduct.

¶ 41     In summary, we conclude that none of the challenged prosecutorial remarks were improper.

## IV.     Cumulative Error

¶ 42     Rodriguez contends that the cumulative effect of the alleged errors requires reversal.  We have not identified "multiple errors that collectively prejudice the substantial rights of the defendant." *Howard-Walker v. People*, 2019 CO 69, ¶ 25.  Therefore, reversal is not warranted.  *See Herold*, ¶ 101.

## V.     Voir Dire Instruction

¶ 43     Lastly, Rodriguez contends that the trial court violated his right to a jury trial because it instructed the jury that it "will" convict if the elements are proved.  In his view, such an instruction infringed the "right" for a jury to acquit for any reason — a power also known as jury nullification.  We disagree.

### A.     Additional Background

¶ 44     At the beginning of voir dire, the trial court instructed the jury that it must follow the law in determining its verdict:

So it's your responsibility to follow the law. And that might sound sort of obvious, but sometimes we get people on the panel that feel that they can make up their own law, or the law that's been developed by the legislature is something that they don't think is right and they're not going to enforce it. Let me give you an example. And this is sort of a trivial example, but let's say that this were a speeding case.

How many of you have driven from Pueblo to Walsenburg on I-25? Just about everybody. Let's say it's a speeding case. The speed limit is 75 miles an hour. The prosecution has proven its case. They've proven the person charged was the driver. They've proven the speed limit is 75. They've proven the driver knew the speed limit was 75 and was driving 85. You could not be honest to your oath and find that Defendant not guilty because it's wide open and 85 is just fine on that stretch of the road. You can't do that.

. . . .

And, frankly, sometimes, in cases involving drugs, there are some people that feel differently from what our statutes are, but what I need on the jury are people who can follow the law.

¶ 45    Soon after, the court also instructed the jury that it "will" find

Rodriguez guilty if the crime is proved beyond a reasonable doubt:

If you find from the evidence that each and every element of the crime has been proven beyond a reasonable doubt, you will find the Defendant guilty.

20

## B. Standard of Review and Applicable Law

¶ 46 A trial judge has wide discretion in conducting a trial but must correctly instruct the jury on the applicable law. *Rodriguez*, ¶ 38. We review de novo whether the trial court properly instructed the jury on the applicable law. *Id.*

¶ 47 Jury nullification is the "de facto power" of a jury to acquit a defendant even though the law or evidence may dictate otherwise. *Id.* at ¶ 40; *see also People v. Waller*, 2016 COA 115, ¶ 57 ("Nullification is a juror's 'knowing and deliberate rejection of the evidence or refusal to apply the law because the result dictated by law is contrary to the juror's sense of justice, morality, or fairness.'") (citation omitted). This power is only made possible because jury deliberations are secret. *Rodriguez*, ¶ 40. But while a jury has the power to nullify, "there is no constitutional right to jury nullification." *People v. Scott*, 2021 COA 71, ¶ 21 (quoting *United States v. Kleinman*, 880 F.3d 1020, 1035 (9th Cir. 2017)).

¶ 48 The jury's power to nullify stands in tension with the jury's "sworn duty to follow the law." *Rodriguez*, ¶ 40; *see also* COLJI-Crim. E:01 (2024) ("Even if you disagree with or do not understand the reasons for some of the rules of law, you must follow them.").

For this reason, "courts have consistently disapproved of instructions that would inform the jury of its power to nullify." *Rodriguez*, ¶ 41; *see also Scott*, ¶ 16; *Waller*, ¶ 76; *People v. Wilson*, 972 P.2d 701, 706 (Colo. App. 1998).

## C. Analysis

¶ 49 Here, there was nothing improper about the court's instruction. The court did not misstate the law by instructing the jury, through its speeding analogy, to convict if the crime's elements were proved beyond a reasonable doubt. A prior division of this court upheld essentially the same instruction during Rodriguez's first trial, and we agree with its reasoning. *Rodriguez*, ¶ 42. Like in *Rodriguez*, here, "the court did not tell the jurors that they did not have the power to nullify; the court told the jurors that they had a duty to follow the law." *Id.*

¶ 50 The court also did not err by instructing that the jury "will" find Rodriguez guilty if all elements are proved beyond a reasonable doubt. Rodriguez argues that the use of the word "will" instead of "should" erroneously "eviscerated" the jury's power to nullify. We disagree. First, the court is not required to inform the jury of their power to nullify, as it is a *de facto* power, not a right. *See*

22

*Rodriguez*, ¶ 40. Second, the jury's nullification power derives from the inherent secrecy of the jury deliberation process — which the court's instruction did not disturb. *Id.* Lastly, we agree with the division in *Waller*, ¶ 72, that the word "should" is "no less obligatory" than the word "will" in the context of this jury instruction. *See also People v. Munoz*, 240 P.3d 311, 317 (Colo. App. 2009) (holding that the word "should" in a reasonable doubt instruction "conveys to the jury a sense of duty or obligation and not discretion").

¶ 51    Therefore, we reject Rodriguez's contention that the court's instruction extinguished the jury's nullification power or violated his right to a jury trial. *See id.* at ¶ 77.

## VI.   Disposition

¶ 52    The judgment is affirmed.

JUDGE FREYRE and JUDGE SULLIVAN concur.